MATTER OF LEGASPI

In Deportation Proceedings

A-13694431

*Decided by Board September 21, 1966*

Respondent, who entered the United States as a nonimmigrant, who was not maintaining his nonimmigrant status, and who, following a brief visit to Mexico, reentered the United States without inspection, made an entry under section 101(a)(13), Immigration and Nationality Act, upon which to predicate a ground of deportability under section 241(a)(2) of the Act [*Rosenberg v. Fleuti*, 374 U.S. 449, inapplicable].

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Entered without inspection.

This is an appeal from a decision of the special inquiry officer, finding the respondent deportable as charged and granting voluntary departure. The appeal will be dismissed.

Respondent is a 48-year-old married male alien, a native and citizen of the Philippines. He was admitted to the United States on October 19, 1962, as a temporary visitor for pleasure, with permission to remain until April 19, 1963. No extension of stay was ever applied for. Sometime in 1963, he filed a petition for naturalization, under the provisions of section 324 of the Nationality Act of 1940, and section 2 of the Act of August 16, 1940, based upon six years of service in the United States Army. Counsel stated at the hearing, "I recognize that Mr. Legaspi's claim to naturalization is a tenuous one" (Tr. p. 2). However, although the Service, upon the filing of the application for naturalization, knew of respondent's status, no deportation proceedings were instituted against him for a period of almost three years.

In December of 1965, respondent and a friend left the United States for a visit to Mexico that was intended to last a few hours, respondent claiming he was advised by his friend that the only reentry document required of him would be his Philippine passport,

which he had in his possession. After several hours in Mexico, respondent and his friend presented themselves at the United States border, seeking admission. Respondent was refused admission because he did not have the proper documentation. For a period of three days, while respondent remained in Mexico, counsel attempted to arrange for parole of respondent into the United States. This was unsuccessful, and on the third day, respondent discussed his problem with the Mexican immigration officials, who advised him that if he did not leave Mexico, he would be jailed for his unlawful presence there.

Respondent stated that he was advised by the Mexican officials to wait until later in the day, when there would be a number of people entering Mexico from the United States, to mingle with them, and to enter the United States by the gate through which they were leaving it. He testified that this was the manner in which he returned to the United States.

Deportability is contested. Although respondent has denied allegations 3, 4 and 5 in the order to show cause, it has been conceded that he physically entered the United States at the time and place set forth in allegation 3, that he crossed through an exit gate, as indicated in allegation 4 rather than through the regular United States border crossing station, and that he did not then present himself to, and was not then inspected by, United States immigrant inspectors (allegation 5). It is counsel's contention, the above facts notwithstanding, that under the holdings in *Rosenberg v. Fleuti*, 374 U.S. 449, 10 L. Ed. 2d 1000, 83 S. Ct. 1804; *Wadman v. Immigration and Naturalization Service*, 329 F.2d 812 (9th Cir.); and *Wong v. Immigration and Naturalization Service*, 358 F.2d 151 (9th Cir.), respondent did not make an "entry," and therefore is not deportable for "entry without inspection."

We concur in the finding of the special inquiry officer that the cited cases do not justify such a holding in the instant matter. The *Fleuti* case was concerned with whether a permanent resident, whose original entry was in all respects lawful and who, had he never stepped out of the United States, would not be subject to deportation on the charges in the order to show cause, rendered himself excludable and hence deportable by an absence of "about a couple hours," and subsequent return to the United States. The Supreme Court, considering the alien's situation in its entirety, and cognizant of the grave and essentially punitive nature of deportation, stated:

* * * we declare today simply that an innocent, casual, and brief excursion by a resident alien outside this country's borders may not have been "intended" as a departure disruptive of his resident alien status and therefore

may not subject him to the consequences of an "entry" into the country on his return. The more civilized application of our immigration laws given recognition by Congress in § 101(a)(13) and other provisions of the 1952 Act protects the resident alien from unsuspected risks and unintended consequences of such a wholly innocent action. Respondent here, so far as appears from the record, is among those to be protected. However, because attention was not previously focused upon the application of § 101(a)(13) to the case, the record contains no detailed description or characterization of his trip to Mexico in 1956, except for his testimony that he was gone "about a couple hours," and that he was "just visiting"; "taking a trip." That being the case, we deem it appropriate to remand the case for further consideration of the application of § 101(a)(13) to this case in light of our discussion herein. If it is determined that respondent did not "intend" to depart in the sense contemplated by § 101(a)(13), the deportation order will not stand * * *. *Rosenberg* v. *Fleuti, supra,* at pp. 462 and 463.

The pertinent portion of section 101(a)(13) interpreted by the Supreme Court in the *Fleuti* case, by its terms, relates only to "an alien having a lawful permanent residence in the United States."

In the *Wadman* case, *supra,* the 9th Circuit had before it not the question of "entry", but whether a five day visit to Mexico broke the continuous period of physical presence in the United States required to establish eligibility for suspension of deportation under section 244(a)(1) of the Act. (We shall not discuss the issue of establishing good moral character also presented to the court in *Wadman,* since it has no relevance to the instant case.) Although there were some small factual similarities between *Wadman* and *Fleuti,* and the court in *Wadman* made repeated reference to the *Fleuti* decision, the legal question to be resolved was not the same in *Wadman.* The only sense in which *Fleuti* can be considered to have been authority for *Wadman* is that the pattern of legal reasoning followed in *Wadman* was a derivative of *Fleuti.* The actual issue in *Wadman* was posed and disposed of by the court in the two paragraphs which follow:

Here there can be no question of the sufficiency of physical presence. The question is whether there was a sufficient continuity. In our judgment, the term "continuous" is no more subject to a hard and fast construction than is the term "intended." The question is whether the interruption, viewed in balance of its consequences, can be said to have been a significant one under the guides laid down in *Fleuti.*

The answer cannot be found as a matter of law. Further scrutiny by the special inquiry officer is necessary. *Wadman* v. *Immigration and Naturalization Service, supra,* at p. 816.

Deportability in *Wadman* could be, and was, established irrespective of the question of whether return from the five-day visit was an "entry." The character of the visit, *not the return,* was relevant only to the question of eligibility for relief from deportation.

In the *Wong* case, *supra*, (which cited both *Wadman* and *Fleuti*), although the original entry and subsequent return from Mexico were made by the alien under a false claim of American citizenship (as distinguished from *Wadman*, who originally entered with an immigrant visa and return from Mexico with the documentation of a returning resident alien), the legal issue raised by the visit is identical with that in *Wadman*. Deportability could be, and was, established irrespective of the character of the alien's return from Mexico. He would have been deportable if he had never left the United States. It was the character of the visit, not the return, which was relevant, and not to deportability but to the question of eligibility for relief from deportation (whether, as in *Wadman*, the stay in Mexico had interrupted the continuous period of physical presence in the United States required for suspension of deportation).

The issue in this case is more closely related to *Fleuti* than either *Wadman* or *Wong*. Here, the question of deportability, as charged in the order to show cause, will stand or fall on whether respondent's return from Mexico was an "entry" as contemplated by section 101(a)(13). *Wadman* and *Wong* are not controlling. And *Fleuti* cannot aid respondent, since it interpreted the exception contained in section 101(a)(13), which is restricted by its terms to aliens having a lawful permanent residence in the United States. Respondent has never been admitted for lawful permanent residence.

The holding in *Fleuti*, in spite of background discussion in the opinion, relates to a specific and clearly defined issue. It is not, and we believe it was not intended to be used as, blanket authority for the proposition that no short-term absence of any alien from the United States can result in an "entry" on return. Neither can it serve to wipe out, for all and any purposes, the fact that under specific circumstances such an absence may well affect the alien's status or eligibility for relief.

Counsel has discussed two other factors in this case. He stated that respondent's brother has filed a preference petition on respondent's behalf, based on their relationship, and that it was respondent's intention to apply for a section 245 adjustment upon the approval of the petition. Because of his entry without inspection, respondent has rendered himself statutorily ineligible for a section 245 adjustment. However, respondent will gain a visa preference if the petition is approved, and it can be used by respondent and his family in making applications for immigrant visas at a consulate abroad.

Second, it was indicated in the brief on appeal dated August 8, 1966 that respondent's petition for naturalization was still pending. Counsel stated at the hearing on April 23, 1966, that although the

claim to naturalization eligibility was tenuous, a substantially similar case was scheduled for hearing in the United States District Court a week later, which, if granted, would improve respondent's chances for naturalization (Tr., p. 2). No further particulars were given, nor was the case or its outcome referred to in the brief. We have no desire to foreclose any possibility of naturalization for respondent on the basis of six years of service in the United States Army, but we cannot take or suspend action on the basis of the scanty and vague material now of record on this point. The dismissal of this appeal is without prejudice to a motion to reopen, if such motion is made within a reasonable time, and is supported by substantial evidence showing a likelihood that respondent's application for naturalization would be approved upon hearing by the appropriate court.

At this time, the only relief for which respondent is eligible is voluntary departure, which has been granted by the special inquiry officer.

ORDER: It is ordered that the appeal be and the same is hereby dismissed, without prejudice to a motion to reopen upon the conditions set forth above.