MATTER OF DABIRAN

In Exclusion Proceedings

A-11974380

*Decided by Board July 17, 1970*

The status of an alien parolee whose continued inspection following parole into the United States was delayed because he was arrested for a crime, he escaped from custody and was not apprehended for 7 years, has not been altered thereby, and upon apprehension and termination of parole, exclusion proceedings were proper in his case.

EXCLUDABLE: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant without visa.

ON BEHALF OF APPLICANT: Hiram W. Kwan, Esquire
840 North Broadway
Los Angeles, California 90012

The applicant, a native and citizen of Iran, appeals from an order of exclusion and deportation entered by the special inquiry officer on February 17, 1970. Counsel on appeal excepts to the finding of excludability.

The applicant, an unmarried male alien, 30 years of age, applied for admission at the port of Del Rio, Texas on November 29, 1962. He was paroled for further inspection to determine his admissibility to the United States (Ex. 2).

The applicant was originally admitted to the United States as a nonimmigrant student on January 25, 1960, destined for attendance at the Glendale College, Los Angeles, California. He was last granted an extension on his stay on July 24, 1961 (Ex. 5). He married a citizen of the United Staes on July 18, 1961 (p. 14). He testified that he filed an application for adjustment of status to that of a permanent resident alien under section 245 of the Immigration and Nationality Act based upon his marriage to a United States citizen (p. 14). He further testified that his marriage was terminated by a divorce decree entered by the Superior Court for the County of Los Angeles on May 19, 1964. There is

no showing of record that the applicant's status was adjusted to that of a permanent resident alien (p. 33).

Counsel in his notice of appeal (Form I-290A) maintains that the exclusion proceeding should be terminated because the applicant did not knowingly depart from the United States when he entered Mexico. The applicant testified that on or about November 29, 1962, he was in Del Rio, Texas with his friend, James Farmer; that at the suggestion of his friend, Farmer, they went shopping for clothing; and that he did not realize that he was being taken into Mexico by his friend: "I really did not realize it was Mexico [I thought] it was another town [or] other . . . somewhere in Texas" (pp. 8 and 9). The applicant further testified that he was in Mexico for two hours (p. 26) and that he only learned of his presence in Mexico when he attempted to reenter the United States (p. 12).

The applicant was paroled into the United States with instructions to report to the District Director at Los Angeles, California "no later than December 29, 1962" (Ex. 2). He testified that he was under the impression that he ". . . was to report to Immigration on January 29th of 1963 . . ." (p. 28). Following his parole, the applicant and his friend proceeded to Marietta, Georgia where they were arrested for armed robbery on January 10, 1963 (Ex. 6 and p. 28). He escaped from the Marietta jail on February 27, 1963, prior to his trial for armed robbery which was scheduled for March (pp. 7, 28 and Ex. 7). The record establishes that extradition proceedings to return the applicant to the State of Georgia were pending at the time of the hearing (Ex. 6).

Following his escape from the Marietta jail, the applicant traveled to Los Angeles where he assumed the name of Tony Bey and secured a social security card and an insurance license from the State of California, claiming to be a citizen of the United States (pp. 17 and 18). The applicant admits that he did not report his presence to the Immigration Service at Los Angeles because he feared that he would be returned to Georgia for trial and eventual deportation (p. 35). He was apprehended on or about January 15, 1970 and detained for a hearing in exclusion proceedings (Ex. 1). The parole accorded the applicant on November 29, 1962 was revoked on January 15, 1970 (Ex. 1).

The applicant has been found excludable under the provisions of section 212(a)(20) of the Immigration and Nationality Act, in that, at the time of his application for admission, he was an immigrant not in possession of an immigration visa and not exempt from the presentation thereof by the said Act or regulations made

pursuant thereto. The applicant concedes that he has never applied for and received an immigration visa; that he has never been admitted to the United States for permanent residence (p. 33) ; and that it was his desire to live and remain in the United States (p. 36). The special inquiry officer concludes on the basis of the evidence that the applicant is applying for admission to the United States with the intention of remaining permanently and is exludable under section 212(a) (20) as an immigrant not in possession of an immigration visa or other entry document.

Counsel contends that the exclusion proceedings should be terminated since the applicant did not knowingly depart from the United States and, therefore, is not seeking to make an entry within the meaning of section 101(a) (13) of the Immigration and Nationality Act. Although counsel cites no authority for his contention, he apparently relies on the Supreme Court's decision in the case of *Rosenberg* v. *Fleuti,* 374 U.S. 449 (1963).

The Fleuti case was concerned with whether a permanent resident alien, whose original entry was in all respects lawful, and who, had he never stepped out of the United States, would not be subject to deportation on the charges in the order to show cause, rendered himself excludable, and hence deportable, by an absence of a couple of hours in Mexico and subsequent return to the United States. The pertinent portion of section 101(a) (13) in the *Fleuti* case by its very terms relates only to an alien having a lawful permanent residence in the United States. The Supreme Court held that an innocent, casual and brief excursion by a resident alien outside the country's borders may not have been "intended" as a departure disruptive of his resident alien status, and therefore may not have subjected him to the consequences of an "entry" into the United States on his return. The *Fleuti* case is inapplicable because the applicant was never admitted to the United States for permanent residence, *Matter of Del Rosario,* Interim Decision No. 1989 (BIA, 1969); *Matter of Legaspi,* 11 I. & N. Dec. 819 (BIA, 1966).

There remains the question of whether the applicant made an "entry," albeit an illegal one, when he escaped from custody in Georgia in 1963. The applicant escaped from the custody of Georgia authorities on February 27, 1963, approximately three months after his "parole" into the United States on November 29, 1962. The Supreme Court has said:

The parole of aliens seeking admission is simply a device through which needless confinement is avoided while administrative proceedings are conducted. It was never intended to affect an alien's status and to hold that pe-

titioner's parole placed her legally "within the United States" is inconsistent with the Congressional mandate, the administrative concept of parole, and the decisions of this Court, *Leng May Ma v. Barber*, 357 U.S. 185, 190, 2 L. Ed. 2d 1246, 1249 (1958).

The Supreme Court in a companion case to that of *Leng May Ma v. Barber* had before it the question of whether the deportation of a "paroled" alien should rest upon section 243 of the Immigration and Nationality Act since the alien was not "immediately" deported as required in section 237(a) of the Act.[1] The Court said:

We doubt that the Congress intended the mere fact of delay to improve an alien's status from that of one seeking admission to that of one legally considered within the United States, *Rogers v. Quan*, 357 U.S. 193, 195, 2 L. Ed. 2d 1252, 1254 (1958).

By the same token we do not believe that the delay in according the applicant a hearing in exclusion proceedings which resulted from the fact that he escaped from custody and avoided apprehension by assuming the identity of a citizen of the United States would "improve" his status "from that of one seeking admission to that of one legally considered within the United States," *Rogers v. Quan (supra* at p. 196 and L. Ed. 1254).

It is well established that an alien's parole into the United States does not constitute an "entry" within the meaning of the Immigration and Nationality Act so as to make him eligible for expulsion rather than exclusion proceedings, *Leng May Ma v. Barber (supra)*; *Rogers v. Quan (supra)*; *Siu Fung Luk v. Rosenberg*, 409 F.2d 555, 558 (9 Cir., 1969), pet. for cert. dismissed 396 U.S. 801, 24 L. ed. 2d 58. Section 212(d)(5) of the Immigration and Nationality Act specifically provides that parole bestows no additional rights on an alien, nor does it in any way change the alien's status because it provides that, ". . . when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or *be returned* to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." (Emphasis supplied.) CF. *Klapholz v. Esperdy*, 201 F. supp. 294, 299 (S.D. N.Y., 1961), affirmed 302 F.2d 928 (2 Cir., 1962), cert. denied 371 U.S. 891.

---

[1] Section 237(a) of the Immigration and Nationality Act provides, *inter alia*, that an excluded alien "shall be *immediately* deported to the country whence he came" whereas section 243 of the Act governs "the deportation of an alien in the United States . . . to a country designated by the alien. . . ." (Emphasis supplied.)

Since the applicant's parole alone does not constitute an "entry," the fact that there was no immediate action with regard to his continued inspection because of his escape from custody and the assumption of another identity does not alter his status to that of an illegal entrant. When his parole was revoked upon his apprehension on or about January 15, 1970 (Ex. 1), he was "returned to the custody from which he was paroled." Cf. *Siu Fung Luk* v. *Rosenberg* (*supra* at p. 558). We conclude on the basis of the foregoing that exclusion proceedings were proper in this case. An appropriate order will be entered.

**ORDER:** It is directed that the appeal be and the same is hereby dismissed.