# Matter of Alcibiades Antonio PENA, Respondent

*Decided June 16, 2015*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An alien returning to the United States who has been granted lawful permanent resident status cannot be regarded as seeking an admission and may not be charged with inadmissibility under section 212(a) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a) (2012), if he or she does not fall within any of the exceptions in section 101(a)(13)(C) of the Act, 8 U.S.C. § 1101(a)(13)(C) (2012). *Matter of Koloamatangi*, 23 I&N Dec. 548 (BIA 2003), distinguished.

FOR RESPONDENT: Michele H. Kane, Esquire, Boston, Massachusetts

BEFORE: Board Panel: COLE and WENDTLAND, Board Members. Dissenting Opinion: PAULEY, Board Member.

COLE, Board Member:

In a decision dated November 14, 2011, an Immigration Judge found the respondent inadmissible under sections 212(a)(6)(C)(i), (ii)(I), and (7)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. §§ 1182(a)(6)(C)(i), (ii)(I), and (7)(A)(i)(I) (2006), and ordered him removed from the United States. The respondent has appealed from that decision. The appeal will be sustained and the record will be remanded to the Immigration Judge.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of the Dominican Republic. The record reflects that he was married to a United States citizen who filed a visa petition on his behalf. Based on the September 9, 1996, approval of the visa petition, the respondent filed an application for adjustment of status on December 1, 1999. He indicated on his application that he had no prior arrests. However, at an interview in connection with his application, the Government notified the respondent that its records showed that he had been charged with passport fraud by the Department of State passport office on December 28, 1998. The respondent was asked to provide documentation regarding the final disposition of these charges, which he submitted. On June 5, 2000, the respondent's application for adjustment of status was granted and he was accorded lawful permanent resident status.

On May 24, 2010, the respondent sought to reenter the United States after a trip abroad. At that time he gave a sworn statement in an interview with immigration officials. When asked whether he had ever been arrested, the respondent first replied that he had been arrested in 1998 for applying for a United States passport using the birth certificate and Social Security card of another person. When asked why he indicated that he had never been arrested on his adjustment of status application, the respondent said he thought he had not been arrested in relation to the passport application because he had voluntarily appeared at the passport office after learning from his wife that he was being investigated.[1] He stated that he was fingerprinted at the office and released. He further explained that he was neither charged with nor convicted of passport fraud or any other offense.

After the respondent's interview on May 24, 2010, the Department of Homeland Security ("DHS") issued a notice to appear charging the respondent as inadmissible based on his alleged fraud and prior ineligibility for adjustment of status. At a hearing before the Immigration Judge, the respondent denied the charges. Applying *Matter of Koloamatangi*, 23 I&N Dec. 548 (BIA 2003), the Immigration Judge determined that the respondent had never been accorded lawful permanent resident status because he was ineligible for adjustment of status at the time that he applied. Specifically, the Immigration Judge found that the respondent made a false claim to United States citizenship by knowingly purchasing an illegally obtained birth certificate and Social Security card and that he did not disclose his arrest in this regard in his adjustment of status application.

Based on these findings, the Immigration Judge concluded that the respondent's permanent resident status was unlawfully obtained and that he could therefore be deemed an "arriving alien" and charged under section 212(a) of the Act.[2] He then found the respondent inadmissible as charged. The Immigration Judge further found the respondent ineligible for relief from removal and ordered him removed from the United States.

## II. ISSUE

The threshold issue in this case is whether the respondent, who was granted lawful permanent resident status, can be charged in removal proceedings under section 212(a) of the Act as an arriving alien seeking admission, since he does not fall within any of the exceptions listed in

---

[1] The evidence in the record is not entirely clear as to whether the respondent, in fact, voluntarily presented himself at the passport office.

[2] The term "arriving alien" is defined in relevant part as "an applicant for admission coming or attempting to come into the United States at a port-of-entry" or by certain other means. 8 C.F.R. §§ 1.2, 1001.1(q) (2015).

section 101(a)(13)(C) of the Act, 8 U.S.C. § 1101(a)(13)(C) (2012), which allow for an alien lawfully admitted for permanent residence to be regarded as seeking admission to the United States.[3]

We must resolve the question whether a returning lawful permanent resident can be treated as an arriving alien based on an allegation that he acquired his status unlawfully. We conclude that an alien returning to the United States who has been granted lawful permanent resident status cannot be regarded as seeking admission and may not be charged with inadmissibility under section 212(a) of the Act if he does not fall within any of the exceptions in section 101(a)(13)(C) of the Act.

## III. ANALYSIS

The respondent argues that he has not been properly charged and that these proceedings should have been terminated. He first contends that he should not have been charged as an arriving alien when he returned to the United States because his eligibility for adjustment of status had not been determined at the time of his return. He asserts that if the DHS suspected he was inadmissible at the time he adjusted his status, he should have been allowed to enter as a returning resident and charged with a ground of deportability in section 237(a) of the Act, 8 U.S.C. § 1227(a) (2012).

The respondent also disputes the Immigration Judge's determination that he "willfully misrepresented a material fact" in his application for adjustment of status, in which he indicated that he had never been arrested. The respondent claims that he was not aware that his contact with the Department of State's passport office constituted an arrest. He notes that

---

[3]  Section 101(a)(13)(C) of the Act provides:

> An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien—
>
>   (i) has abandoned or relinquished that status,
>   (ii) has been absent from the United States for a continuous period in excess of 180 days,
>   (iii) has engaged in illegal activity after having departed the United States,
>   (iv) has departed from the United States while under legal process seeking removal of the alien from the United States, including removal proceedings under the Act and extradition proceedings,
>   (v) has committed an offense identified in section 212(a)(2), unless since such offense the alien has been granted relief under section 212(h) or 240A(a), or
>   (vi) is attempting to enter at a time or place other than as designated by immigration officers or has not been admitted to the United States after inspection and authorization by an immigration officer.

his adjustment application was granted after he submitted all of the information requested in that regard.

### A. Returning Lawful Permanent Residents as Arriving Aliens

In deciding whether the respondent is an arriving alien, we examine the language of the statute to determine whether Congress expressed a plain and unambiguous intent that aliens in the respondent's circumstances should be considered applicants for admission under section 101(a)(13)(C) of the Act. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) ("Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."); *Matter of Valenzuela*, 25 I&N Dec. 867, 869 (BIA 2012). Whether language is plain and unambiguous is "determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. at 341.

The plain language of section 101(a)(13)(C) indicates that an alien who does not fall within one of the statutory exceptions and who presents a colorable claim to lawful permanent resident status is not to be treated as seeking an admission and should not be regarded as an arriving alien. *See also Matter of Huang*, 19 I&N Dec. 749, 754 (BIA 1988) (stating that the Government has the burden to show that an alien should be deprived of his lawful permanent resident status if he has a colorable claim to returning resident status).

In addition to the plain language of the statute, we find further support for our position in our case law interpreting the "*Fleuti* doctrine," which predated section 101(a)(13)(C) of the Act. *Rosenberg v. Fleuti*, 374 U.S. 449 (1963).[4] For example, in *Matter of Rangel*, 15 I&N Dec. 789 (BIA 1976), we addressed whether a lawful permanent resident's attempted return constituted an "entry" where her original admission for permanent

---

[4] Before section 101(a)(13)(C) of the Act was enacted by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), the question whether a returning lawful permanent resident was considered to be making an "entry" was initially governed by the so-called "reentry doctrine." *See Leal-Rodriguez v. INS*, 990 F.2d 939, 942−43 (7th Cir. 1993). However, the Supreme Court announced a departure from the long-established concept of "entry" under former section 101(a)(13) of the Act, 8 U.S.C. § 1101(a)(13) (1958), stating that a new entry did not occur when the trip outside the United States was "innocent, casual, and brief." *Rosenberg v. Fleuti*, 374 U.S. at 462. We subsequently recognized that the *Fleuti* doctrine applied only to absences by aliens who had previously been lawfully admitted for permanent residence. *See Matter of Castillo-Pineda*, 15 I&N Dec. 274 (BIA 1975); *Matter of Dabiran*, 13 I&N Dec. 587 (BIA 1970).

residence was unlawful because it involved a false claim. In that case, we had to decide first whether the proper forum in which to adjudicate the lawfulness of an original admission was a deportation proceeding or an exclusion proceeding.[5] We held that the alien was not making an entry within the meaning of the Act and, therefore, that the proper forum for adjudicating the lawfulness of her original admission was a deportation proceeding. *Id.* at 791−92.[6]

The question addressed in *Matter of Rangel* is analogous to that now before us, namely, whether a returning permanent resident who is suspected of unlawfully acquiring his or her status should be placed in exclusion proceedings (now charged with inadmissibility) or deportation proceedings (now charged with deportability). Our decision in *Rangel* comported with the Supreme Court's recognition of the constitutional right of due process that is owed to lawful permanent residents. *See Landon v. Plasencia*, 459 U.S. 21, 30−32 (1982) (citing *Chew v. Colding*, 344 U.S. 590 (1953)).[7]

Prior to the 1996 enactment of section 101(a)(13)(C) of the Act, the proper forum for determining whether a lawful permanent resident had unlawfully obtained his status would have been a deportation proceeding, rather than an exclusion proceeding, unless he was making an "entry." Applying the same rationale to the current law, an alien in the respondent's circumstances should be charged under section 237(a) of the Act, rather than section 212(a), unless he can be regarded as seeking an admission under section 101(a)(13)(C).[8]

---

[5] At that time, the immigration system was bifurcated into two types of proceedings. In general, aliens who were already present in the United States were subject to deportation proceedings, and aliens seeking to enter the country were placed in exclusion proceedings. The IIRIRA revised this system. Generally, both classes of aliens are now placed into removal proceedings, but they are charged with either deportability under section 237(a) of the Act or inadmissibility under section 212(a).

[6] We have applied this reasoning from *Matter of Rangel* in other contexts. For example, in *Matter of Umale*, 16 I&N Dec. 682 (BIA 1979), we held that a petitioner's lawful permanent resident status cannot be attacked in visa petition proceedings based on an allegation that such status was improperly obtained if the petitioner is residing in the United States. In that case, we held that "until the petitioner has been found *deportable* according to the procedures specified by law, she remains a lawful permanent resident of the United States." *Id.* at 683 (emphasis added).

[7] The dissent is misguided in not recognizing that the rationale of the Supreme Court and Board case law was to confer advantages on the class of lawful permanent residents such as the respondent.

[8] We recognize that in *Matter of Collado*, 21 I&N Dec. 1061, 1065 (BIA 1998), we determined that the *Fleuti* doctrine had not survived the enactment of section 101(a)(13)(C) of the Act by the IIRIRA. However, since our decision was issued, the Supreme Court has held that at least one aspect of the *Fleuti* doctrine survived the IIRIRA amendments. *See Vartelas v. Holder*, 132 S. Ct. 1479 (2012) (holding that the

(continued . . .)

In light of the plain statutory language of section 101(a)(13)(C) of the Act and the above-mentioned decisions of the Supreme Court and the Board, we believe that the long-established principles regarding the constitutional rights of lawful permanent residents are equally applicable to returning lawful permanent residents today as they were in the past. *See generally United States v. Texas*, 507 U.S. 529, 534 (1993) (stating that statutes are to be read with a presumption that favors the retention of familiar principles, except when a contrary purpose is evident). Therefore, we conclude that a returning lawful permanent resident who does not fall within one of the exceptions in section 101(a)(13)(C) of the Act cannot be regarded as seeking admission to the United States.

## B. Application to the Respondent

The Immigration Judge found that the respondent was never "lawfully admitted" as a permanent resident because he had obtained his status through fraud. He therefore concluded that the respondent could be regarded as an arriving alien. In making this determination, he relied on our decision in *Matter of Koloamatangi*, 23 I&N Dec. 548, where we held, in the context of eligibility for relief, that an alien who acquired permanent resident status through fraud or misrepresentation had never been "lawfully admitted for permanent residence" and was therefore ineligible for cancellation of removal under section 240A(a) of the Act, 8 U.S.C. § 1229b(a) (2000).[9] *See also Mejia-Orellana v. Gonzales*, 502 F.3d 13 (1st Cir. 2007). Applying this rationale, the Immigration Judge adjudicated the issue of the lawfulness of the respondent's status and found that it had been fraudulently obtained. He therefore found that the respondent was

_____

*Fleuti* doctrine still applies to lawful permanent resident aliens who traveled abroad after a conviction that predated the IIRIRA). The extent to which *Fleuti* remains good law after section 101(a)(13)(C) of the Act was adopted by the IIRIRA continues to be a vigorously contested issue. The Board and some Federal courts have considered the question whether the *Fleuti* doctrine survived the enactment of section 101(a)(13)(C) in the broader context of deciding whether the exceptions listed in sections 101(a)(13)(C)(i)−(vi) of the Act applied to the returning lawful permanent residents in those cases. However, section 101(a)(13)(C) of the Act does not address or otherwise include within its exceptions a lawful permanent resident in the respondent's circumstances. The resolution of this case does not implicate the larger issue of the extent to which the *Fleuti* doctrine has, in fact, survived the IIRIRA.

[9] In *Matter of Koloamatangi*, we relied on the rationale from our prior decision in *Matter of T-*, 6 I&N Dec. 136 (BIA, A.G. 1954). However, we note that in that case the issue was whether the alien was returning to an unrelinquished "lawful domicile," not whether he had been lawfully admitted for permanent residence.

never a lawful permanent resident and thus could be treated as an "arriving alien."

The question whether a returning lawful permanent resident can be regarded as an arriving alien and charged under section 212(a) of the Act was not before us in *Matter of Koloamatangi* because the alien, who was suspected of having procured his status by fraud, was charged with deportability under section 237(a) of the Act. He was therefore afforded the due process owed to him as one who "was facially and procedurally in lawful permanent resident status." *Matter of Koloamatangi*, 23 I&N Dec. at 549. His ineligibility for the relief he sought was determined *after* the Immigration Judge resolved the issue of the unlawfulness of his permanent resident status, not prior to the commencement of proceedings. *See id*.; *see also Matter of Wong*, 14 I&N Dec. 12 (BIA 1972).[10] We therefore conclude that *Matter of Koloamatangi* is not controlling in this case.

Because the respondent is a lawful permanent resident who does not fall within one of the exceptions in section 101(a)(13)(C) of the Act, he should not have been regarded as seeking admission to the United States. Therefore, he cannot be charged under section 212(a) of the Act, notwithstanding any questions regarding the lawfulness of his status. However, the DHS is not precluded from charging an alien such as the respondent under section 237(a) of the Act. The grounds of deportability contain a provision that is clearly applicable to an alien who allegedly obtained his lawful permanent resident status through fraud or misrepresentations. *See* section 237(a)(1)(A) of the Act (providing that "[a]ny alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable"); *see also* section 212(a)(6)(C) of the Act.

We will remand the record to allow the Immigration Judge to address these issues in the first instance, if necessary. If the DHS can meet its burden of proving that the respondent is deportable as an alien who acquired lawful permanent resident status through fraud, then in terms of available relief from removal, the respondent will be in the same position he would have been in if he had never obtained such status. *See Matter of Koloamatangi*, 23 I&N Dec. 548. We express no opinion as to whether the DHS can meet its burden in this particular case.

---

[10] Given our disposition in this case, we need not decide which party would bear the burden of proving admissibility if a returning permanent resident were properly charged under section 212(a) of the Act based on an allegation that he had unlawfully obtained his status. *See generally Matter of Rivens*, 25 I&N Dec. 623, 626 (BIA 2011) (noting the "open question of who . . . bears the burden of showing admissibility, or a lack of inadmissibility, once it has been determined that an alien is an applicant for admission").

## IV.  CONCLUSION

We conclude that the respondent, a lawful permanent resident who does not fall within one of the exceptions in section 101(a)(13)(C) of the Act, cannot be regarded as an arriving alien.  Therefore, the charges brought by the DHS under section 212(a) of the Act should not have been sustained.  Accordingly, we will sustain the respondent's appeal and remand the record to give the DHS an opportunity to properly charge him under section 237(a) of the Act.  If necessary, the Immigration Judge may then determine whether the respondent lawfully obtained his permanent resident status and allow him to apply for any relief from removal for which he may be eligible.

**ORDER:**  The respondent's appeal is sustained.

**FURTHER ORDER:**  The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

*DISSENTING OPINION*:  Roger A. Pauley, Board Member

I believe that the respondent was properly charged under section 212(a) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a) (2012).  As an ostensible returning lawful permanent resident, he did not need to be charged under section 237(a) of the Act, 8 U.S.C. § 1227(a) (2012), because the Immigration Judge found at his removal proceeding that he was never lawfully admitted for permanent residence.

The majority arrives at the opposite result by, in effect, limiting our decision in *Matter of Koloamatangi*, 23 I&N Dec. 548 (BIA 2003), where we held that an alien who acquired permanent resident status through fraud or misrepresentation has never been "lawfully admitted for permanent residence," to the context in which an ostensible lawful permanent resident seeks relief.  The majority therefore finds that *Matter of Koloamatangi* does not apply to the situation in which a returning lawful permanent resident is found to have wrongly obtained his status during removal proceedings.  The majority explains that such a person must be charged under section 237(a) of the Act because he does not fall into any of the six enumerated categories at section 101(a)(13)(C) of the Act, 8 U.S.C. § 1101(a)(13)(C) (2012), allowing for a returning lawful permanent resident to be charged as an applicant for admission.  I disagree.

The majority's position embodies a stark violation of the bedrock principle of statutory construction that a term, in this case "lawfully admitted for permanent residence," appearing in the same statute should be given an identical construction and not be accorded two different meanings.

In that regard, we have consistently held, and the courts of appeals have uniformly endorsed our interpretation, that the phrase "lawfully admitted for permanent residence" means that the alien must have been in substantive compliance with the immigration laws. *See Injeti v. U.S. Citizenship & Imm. Serv.*, 737 F.3d 311 (4th Cir. 2013); *Estrada-Ramos v. Holder*, 611 F.3d 318 (7th Cir. 2010); *Kyong Ho Shin v. Holder*, 607 F.3d 1213 (9th Cir. 2010); *Walker v. Holder*, 589 F.3d 12 (1st Cir. 2009); *De La Rosa v. U.S. Dep't of Homeland Sec.*, 489 F.3d 551 (2d Cir. 2007); *Savoury v. U.S. Att'y Gen.*, 449 F.3d 1307 (11th Cir. 2006); *Arellano-Garcia v. Gonzales*, 429 F.3d 1183 (8th Cir. 2005); *Matter of Koloamatangi*, 23 I&N Dec. 548. Moreover, this understanding long preceded the 1996 enactment of section 101(a)(20) of the Act. *See, e.g.*, *Monet v. INS*, 791 F.2d 752 (9th Cir. 1986); *Matter of Longstaff*, 716 F.2d 1439 (5th Cir. 1983); *Matter of T-*, 6 I&N Dec. 136 (BIA, A.G. 1954).

Significantly, Congress chose to use the same term in section 101(a)(13)(C) of the Act, which is applicable to returning lawful permanent residents, demonstrating that Congress intended that only lawful permanent residents with valid status are subject to its regime. It would have been easy for Congress to preface section 101(a)(13)(C) of the Act with language asserting the construction that the majority would engraft on that section, such as that an alien "admitted for lawful permanent residence, *whether or not such status was rightly conferred*," shall not be regarded as seeking admission unless one or more of the six enumerated exceptions applies. However, by using the very term it defined in section 101(a)(20) of the Act (indeed, the same subsection!), Congress clearly expressed its intent that the definition therein applies. Thus, the Immigration Judge correctly determined that *Matter of Koloamatangi* governs. The fact that a different regime existed prior to the 1996 enactment of section 101(a)(13)(C) of the Act is irrelevant where we have found that Congress intended to abandon that regime for returning lawful permanent residents in significant respects. *See Matter of Collado*, 21 I&N Dec. 1061 (BIA 1998).

The majority maintains that the respondent was entitled to be treated as a lawful permanent resident for entry purposes because at the time he arrived at the point of entry, it had not yet been determined that his permanent resident status had been improperly conferred, and none of the six exceptions in section 101(a)(13)(C) of the Act was implicated. Once again, I disagree. Just as we determined in *Matter of Valenzuela-Felix*, 26 I&N Dec. 53 (BIA 2012), the ensuing removal proceeding is the proper forum in which to make a determination whether the respondent was correctly charged under section 212(a) of the Act.

Fortunately, not much damage will result from the majority's erroneous decision. As the majority opinion observes, the Department of Homeland Security ("DHS") may charge a returning lawful permanent resident who it

believes has wrongly obtained his or her status as having been inadmissible at the time of adjustment of status. *See* section 237(a)(1)(A) of the Act. If such charge is upheld, *Matter of Koloamatangi* will apply to render the alien ineligible for relief to the extent relief is sought based on lawful permanent resident status. However, the majority decision does have a modicum of practical import because an alien charged under section 237(a) (as opposed to section 212(a)) may seek a waiver of deportability under section 237(a)(1)(H) of the Act, if he or she is subject to removal as having been inadmissible at the time of admission because of fraud. That section contains more generous provisions allowing for such a waiver than does the comparable provision at section 212(i) of the Act.[1]

To the extent that the majority confers an advantage on the class of lawful permanent residents who wrongly obtained their status—as compared to the class of lawful permanent residents who obtained their status rightfully but are charged as applicants for admission under section 101(a)(13)(C)—I find it an unlikely expression of congressional intent. The former class, which includes the respondent in this case, generally represents a less deserving group inasmuch as they ordinarily will have obtained their status by fraud or other wrongful means.[2]

For the foregoing reasons, I would find that the Immigration Judge correctly applied *Matter of Koloamatangi* to sustain the charges under section 212(a) of the Act.

---

[1]   For example, section 212(i) of the Act generally requires a showing of "extreme hardship" to a qualifying relative, whereas section 237(a)(1)(H) of the Act contains no such requirement.

[2]   Indeed, the majority decision seemingly requires that even an alien who purchased a fraudulent green card, but was not convicted of that offense, is entitled to be charged under section 237(a) of the Act. I recognize that, on occasion, a lawful permanent resident who obtained status wrongly may not be at fault, for example, where a child obtained status derivatively and was unaware of his or her parent's wrongful acts in obtaining lawful permanent resident status, or where the DHS erred in conferring lawful permanent resident status despite full disclosure by an alien of facts that should have led to the denial of adjustment. But such instances are relatively rare and, in any event, such an alien has nevertheless benefited from a status wrongly conferred.