**Christel GUILLORY, Petitioner,**

v.

**Loretta E. LYNCH, Attorney General, Respondent.**

**No. 15–3005.**

United States Court of Appeals, Sixth Circuit.

Nov. 16, 2015.

Before: SUTTON and KETHLEDGE, Circuit Judges; BECKWITH, District Judge.*

## OPINION

BECKWITH, District Judge.

Petitioner Christel Guillory petitions this Court to review the decision of the Board of Immigration Appeals ("BIA") finding that she abandoned her status as a lawful permanent resident of the United States. We find that substantial evidence

supports the BIA's decision and, therefore, deny the petition for review.

## I.

Petitioner Christel Guillory was born in Germany in 1952. In 1982, Petitioner married an American serviceman, Joseph Elliot. In September 1982, Petitioner gave birth to a daughter in an American Army hospital in Berlin. At about the same time, Petitioner was diagnosed with Crohn's disease and had two surgeries provided by the German healthcare system.

In 1984, Petitioner and her daughter moved with Elliot to Fort Carson, Colorado. Petitioner became a lawful permanent resident as Elliot's spouse and received a green card under the name Christel Elliot. As a military spouse, Petitioner received free treatment for her Crohn's disease, including two more surgeries. In 1986, however, Petitioner and Elliot divorced and she lost her free healthcare. She then obtained healthcare through subsidized clinics in Colorado.

In 1988, Petitioner married Ricky Bowlds, a U.S. citizen. They lived in Colorado Springs. Petitioner testified that she did not get a new green card under her new name because it was too expensive. Petitioner divorced Bowlds in 2001, but not before picking up a conviction in Colorado for possession of marijuana with intent to deliver.

Later in 2001 Petitioner met her current husband, Lionel Michael Guillory. Petitioner became engaged to Guillory a few months afterward and they moved to Houston in the hopes of obtaining better healthcare for Petitioner. Guillory taught classes at Houston Community College but

* The Honorable Sandra S. Beckwith, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

was ineligible for employer-sponsored healthcare. Therefore, in December 2002, Petitioner and Guillory moved to Germany where Petitioner could again use the German healthcare system to obtain treatment for her Crohn's disease.

Petitioner and Guillory were married in Germany in 2003. Guillory was not able to obtain full-time employment in Germany nor could he obtain German citizenship because he refused to learn to speak German. Instead, Guillory taught several political science courses for American online universities. Petitioner worked part-time at various jobs. Petitioner testified that there was no definite time table for returning to the United States—her return depended on whether her health could be completely restored in Germany or whether Guillory could obtain a job in the United States that provided health benefits.

Petitioner and Guillory lived in Germany continuously from 2003 to 2006. Guillory returned to Houston in 2006 and resumed teaching classes at Houston Community College. Petitioner continued to live in Germany. Between 2006 and 2008, Peti-

tioner traveled to the United States ten times and returned to Germany. Petitioner re-entered the United States each time under the Visa Waiver Program ("VWP") instead of as a lawful permanent resident.[1] Each time Petitioner returned to the United States under the VWP, she failed to disclose her prior controlled substance conviction on the I–94W form. Petitioner testified that she entered the country under the VWP instead of as a returning lawful permanent resident because she was afraid she would be held up and questioned at customs about her green card and admissibility status.[2]

Petitioner and Guillory re-married in the United States. Petitioner testified that they did this to make it easier for her to get updated immigration documents. In 2008, Guillory obtained a permanent teaching position at Houston Community College and received health benefits. Petitioner and Guillory purchased a condominium in Houston in 2008 and four acres of land in Colorado in 2009.

In November 2008, Petitioner was stopped by immigration officers at the air-

---

**1.** The Visa Waiver Program permits citizens of participating countries to travel to the United States without a visa for visits of 90 days of less if they meet certain other requirements. *See* 8 U.S.C. § 1187; 8 C.F.R. § 217.1, *et seq.* On the other hand, a lawful permanent resident who is "returning from a temporary visit abroad" will be permitted re-entry to the United States without producing a passport, immigrant visa, re-entry permit, or other document. *See Karimijanaki v. Holder,* 579 F.3d 710, 714–15 (6th Cir.2009) (citing 8 U.S.C. § 1101(a)(27)(A); 22 C.F.R. § 42.22(a); 8 U.S.C. § 1181(b)).

**2.** Petitioner contends in her briefs that she did not want to be delayed trying to enter the country because of the frequency and urgency of her need to use the bathroom due to the symptoms of Crohn's disease. This contention is in no way supported by the administrative record. Petitioner simply lists her Crohn's disease symptoms and summarily

states that these symptoms are the reason she was afraid of being detained and questioned. Petitioner's actual hearing testimony is clear, however. Petitioner was asked twice why she was afraid of being delayed at customs and she never cited her Crohn's disease as one of the reasons. *See* AR 139 ("Q. [W]hy did you, what were you doing when you entered on a visa waiver? ... A. I didn't want to show my green card, because I thought it was, it wasn't, it wasn't good anymore."); AR 148–149 (Petitioner testifying that she was afraid of being stopped and questioned about her admissibility status). Moreover, Petitioner testified that her condition was in remission beginning .in 2003 and stable on medication when she re-entered the country in 2008. AR 105, 148. Additionally, Petitioner's ability to take numerous airplane trips between the United States and Germany cuts against a reasonable inference that Crohn's disease played any part in her use of the VWP to enter the country.

port in Detroit attempting to enter the United States from Germany because she matched a criminal watch list. She admitted that she failed to disclose her prior controlled substance conviction. Petitioner also told the immigration officer that she did not intend to stay in the United States permanently at that time. After Plaintiff was denied entry under the VWP, she claimed re-entry as a lawful permanent resident. She was then paroled into the United States for removal proceedings. Plaintiff returned to Germany for Christmas that year and upon her re-entry to the United States immigration officers confiscated her green card.

The Department of Homeland Security ("DHS") issued Petitioner a notice to appear charging her with inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an alien seeking admission without a valid immigrant visa or entry document and under 8 U.S.C. § 1182(a)(6)(C)(i) as alien attempting to procure admission by making a fraudulent or willful misrepresentation of a material fact. In the event the DHS determined that she was inadmissible, Petitioner protectively filed applications for waiver of inadmissibility under former § 212(c) and § 212(i) of the INA.[3]

After conducting an evidentiary hearing on the notice to appear, the immigration judge ("IJ") issued a written decision finding that the government had proved by "clear and convincing evidence" that Petitioner had abandoned her LPR status. In reaching this conclusion, the IJ noted Peti-

tioner's subjective intent to return to the United States when either her health improved or her husband obtained health insurance. The IJ observed, however, that neither of those events had a reasonable probability of occurring within a relatively short period of time. The IJ also found that Petitioner was able to manage her Crohn's disease in Colorado for a substantial period of time without health insurance and that she could have moved back to Colorado instead of Germany in order to obtain cheaper health care. As further evidence of intent to abandon her LPR status, the IJ cited the fact that Petitioner did not return to the United States at all between December 2002 and February 2006 and that between February 2006 and November 2008 she spent roughly half her time between the United States and Germany. Finally, the IJ cited the numerous times Petitioner used the VWP to enter the country instead of presenting her green card, her concealment of her criminal history on the I–94W form, and her admission to the customs officer that she did not intend to stay in the United States, as additional evidence of her intent to abandon her LPR status. These facts, the IJ concluded, showed that Petitioner's absence from the country was not a temporary visit abroad but rather evinced an intention to abandon her LPR status. Because she had abandoned her LPR status, the IJ found that Petitioner was removable as charged under § 1182(a)(7)(A)(i)(I) as an alien attempting to enter the country without a valid entry document. This find-

---

**3.** Under former INA § 212(c), aliens convicted of controlled substance offenses or crimes involving moral turpitude were eligible to apply to the Attorney General for a waiver of inadmissibility. Although amended by the Illegal Immigrant Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), a § 212(c) waiver of inadmissibility remains retroactively available under certain circumstances to aliens who were convicted before

the date of the amended act. *I.N.S. v. St. Cyr.*, 533 U.S. 289, 326, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). Under § 212(i)(8 U.S.C. § 1182(i)), the Attorney General may waive inadmissibility due to willful fraud or misrepresentation if the alien's removal will result in extreme hardship to the alien's spouse or child, if the spouse is a U.S. citizen or lawfully admitted resident.

ing also meant that Petitioner was ineligible for a waiver of inadmissibility.

The IJ also found that Petitioner was removable from the country pursuant to § 1182(a)(6)(C)(i) as an alien attempting to procure admissibility by willfully making a material misrepresentation of fact. In support of this finding, the IJ cited the numerous times Petitioner concealed her controlled substance conviction on the VWP form. While Petitioner argued that her misrepresentations were not material because the immigration officer admitted that she likely would have been paroled into the country had she admitted her conviction, the IJ concluded otherwise because it caused immigration officers to refer her for a secondary inspection and caused them to believe that she was an arriving alien. Moreover, the IJ found that Petitioner was ineligible for a hardship waiver of inadmissibility under § 212(i) because she was a VWP applicant. VWP applicants, the IJ noted, agree to waive their right to a removal hearing except for claims of asylum. Since Petitioner was a VWP applicant, the IJ concluded that she was per se ineligible for an extreme hardship waiver.

Petitioner filed a timely appeal of the IJ's decision to the BIA. She raised three assignments of error in her appeal. First, Petitioner argued that the IJ applied the wrong burden of proof in finding that she abandoned her LPR status. Petitioner argued that the IJ erred by using the "clear and convincing evidence" standard when the correct standard is the higher "clear, unequivocal, and convincing evidence" standard. This error alone, Petitioner argued, warranted a remand to the IJ to apply the correct standard. Second, Petitioner argued that the immigration judge erred in finding that she had abandoned her LPR status. Third, Petitioner argued

that the IJ erred in finding that she was not eligible for waiver of inadmissibility.

The BIA issued a written decision dismissing Petitioner's appeal. The BIA adopted the IJ's findings of fact as not being clearly erroneous. The BIA agreed with Petitioner that the IJ applied the wrong standard in finding that she had abandoned her LPR status. The BIA concluded, however, that because it reviews *de novo* whether a party has satisfied its burden of proof, it could correct the IJ's error by applying the correct "clear, unequivocal, and convincing evidence" standard on appeal. Then, citing the same facts as the IJ, the BIA concluded that the DHS had shown by clear, unequivocal, and convincing evidence that Petitioner had abandoned her LPR status. The BIA also concluded that Petitioner's abandonment of her LPR status meant that she was ineligible for waivers of inadmissibility. The BIA, therefore, dismissed Petitioner's appeal.

Petitioner filed a timely petition for review of the BIA's decision.

## II.

Before proceeding to the merits of Petitioner's petition to review, we have two jurisdictional issues to resolve.

■ First, the Attorney General filed a notice indicating that the DHS has executed the BIA's final order of removal and that Petitioner departed for Germany in July 2015. Petitioner's removal to Germany, however, does not render moot her petition to review the BIA's order of removal because a favorable decision from us would provide her with an opportunity to apply to the Attorney General for waivers of inadmissibility. *Harmon v. Holder,* 758 F.3d 728, 732–33 (6th Cir.2014). Accordingly, we conclude that Petitioner's removal from the United States does not deprive

us of subject matter jurisdiction over her petition to review the BIA's decision.

■ Second, the government contends that we lack subject matter jurisdiction over Petitioner's petition for review because she failed to administratively exhaust a claim that is dispositive of her petition. Specifically, the government argues that Petitioner failed to appeal to the BIA the IJ's determination that she is removable as an alien seeking admission to the United States by misrepresenting a material fact. *See* 8 U.S.C. § 1182(a)(6)(C)(i)("Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible."). According to the government, Petitioner admitted to the IJ that she was an alien seeking admission to the United States. The government contends that Petitioner is bound by that admission. The government argues that Petitioner failed to appeal the IJ's finding that she made a material misrepresentation (denying that she had a controlled substance conviction on her I–94W form) in order to gain admission to the United States. Therefore, the government argues, Petitioner has not administratively exhausted the IJ's determination that she is removable from the country pursuant to § 1182(a)(6)(C)(i). The government contends that this issue is determinative of Petitioner's petition for review because that ruling stands regardless of whether she prevails on the issue of whether she abandoned her LPR status.

Petitioner, however, disputes that she failed to administratively exhaust the IJ's determination that she made a material misrepresentation to gain admission into the United States. Petitioner points out that in her brief on appeal to the BIA she argued that her alleged misrepresentation was not material because during the removal hearing the immigration officer admitted that she probably would have been paroled into the United States as an LPR even if she had disclosed her prior conviction. Petitioner also contends that her admission that she was an alien seeking admission to the United States is immaterial because under current BIA case law, an LPR returning to the United States is not regarded as seeking admission and cannot be charged with inadmissibility under § 1182(a).

In an appeal from a final order of removal, we have jurisdiction to review only those claims that the alien has properly presented to the BIA. *Hasan v. Ashcroft*, 397 F.3d 417, 419 (6th Cir.2005); 8 U.S.C. § 1252(d)(1). Thus, in this case, we would not have jurisdiction to review the IJ's determination that Petitioner is removable under § 1182(a)(6)(c)(i) if she did not properly present this claim to the BIA. Nevertheless, even if we were to agree with the government that Petitioner failed to appeal the IJ's determination that she is inadmissible under § 1182(a)(6)(C)(i), we agree with Petitioner that this issue is not dispositive of her appeal of the BIA's conclusion that she abandoned her LPR status.

Section § 1182(a)(6)(C)(i) states, "Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible." Under 8 U.S.C. § 1101(a)(13)(C), however, an alien who has been admitted as a lawful permanent resident is not to be considered seeking admission into the United States unless one of six enumerated exceptions applies. Indeed, an LPR cannot be regarded as "seeking admission" to the United States, and cannot be

charged with inadmissibility under § 1182(a), unless one of the exceptions in § 1101(a)(13)(C) applies. *Matter of Pena,* 26 I. & N. Dec. 613, 615 (BIA 2015). One of the exceptions, when the alien has abandoned her LPR status, 8 U.S.C. § 1101(a)(13)(C)(i), is the main issue presented in this appeal and we address it further below. Making a material misrepresentation in order to procure admission into the United States, however, is not one of the other five situations listed in § 1101(a)(13)(C) in which an LPR can be regarded as "seeking admission" to the United States. Moreover, and more importantly, Petitioner was not charged with inadmissibility under any of the other five exceptions in § 1101(a)(13)(C). We agree with Petitioner, therefore, that although she initially sought admission into the United States as an alien under the VWP, she was not properly charged with inadmissibility under § 1182(a)(6)(C)(i) since she had a colorable claim to LPR status at the time she sought entry. Indeed, the DHS recognized Petitioner as an LPR who had not formally abandoned her status in its notice to appear. AR 829. In other words, we agree that Petitioner is not inadmissible under § 1182(a)(6)(C)(i).

The upshot, therefore, is that we agree with Petitioner that her admission that she was an alien seeking admission into the United States, and her alleged failure to administratively appeal the immigration judge's determination that she is inadmissible under § 1182(a)(6)(C)(i), are not dispositive of her other properly exhausted claims. The government does not contend that Petitioner failed to administratively exhaust the immigration judge's determination that she abandoned her LPR status. Accordingly, we have jurisdiction under § 1252(d)(1) to review the BIA's disposition of that claim.

## III.

Where, as in this case, the BIA affirms the IJ's decision and adds its own comments, we review both the IJ's and the BIA's decisions. *Hachem v. Holder,* 656 F.3d 430, 434 (6th Cir.2011). We review questions of law *de novo* but give deference to the BIA if it reasonably interprets immigration statutes and regulations. *Lateef v. Holder,* 683 F.3d 275, 279 (6th Cir. 2012). We must uphold the BIA's order of removal if it is supported by substantial evidence. *Id.* We can reverse the BIA's decision only if the facts are so conclusive that any reasonable adjudicator would have been compelled to conclude to the contrary. *Id.* In other words, the evidence must compel a conclusion that the BIA was wrong. *Id.*

## IV.

■ Petitioner first argues that pursuant to 8 C.F.R. § 1003.1(d)(3), the BIA only has authority to review an IJ's decision and may not make an "inquiry in the first instance" as to whether the government met its burden of proof. Petitioner contends that the BIA exceeded its authority by applying *de novo* the clear, unequivocal, and convincing standard to determine whether the government proved that she abandoned her LPR status. Petitioner argues further that since it is undisputed that the IJ held the government to a lower burden of proof, there was no decision of the IJ for the BIA to review. In other words, according to Petitioner, the IJ must first issue a decision under the correct burden of proof before the BIA can exercise its authority to review the IJ's decision. Since the BIA conceded that the IJ applied the wrong standard in this case, Petitioner argues that the BIA should have remanded the case to the IJ to apply the correct standard instead of applying the standard itself. The government, how-

ever, argues that the question whether it met its burden of proof was a question of law that the BIA was authorized to review *de novo*.

The immigration regulations establish the scope of the BIA's review of an IJ's decision:

(i) The Board will not engage in *de novo* review of findings of fact determined by an immigration judge. Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous.
(ii) The Board may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges *de novo*.
(iii) The Board may review all questions arising in appeals from decisions issued by Service officers *de novo*.
(iv) Except for taking administrative notice of commonly known facts such as current events or the contents of official documents, the Board will not engage in factfinding in the course of deciding appeals. A party asserting that the Board cannot properly resolve an appeal without further factfinding must file a motion for remand. If further factfinding is needed in a particular case, the Board may remand the proceeding to the immigration judge or, as appropriate, to the Service.

8 C.F.R. § 1003.1(d)(3). In its written decision, the BIA stated that since § 1003.1(d)(3)(ii) provides for *de novo* review of the question whether a party has met its burden of proof, it could correct the IJ's error by applying the clear, unequivocal, and convincing standard on review of his decision. As stated above, we will give deference to the BIA's interpretation of its own regulations if it is reasonable. Here, the BIA interpreted

§ 1003.1(d)(3)(ii) to permit it to decide *de novo* whether the government met its burden of proof based on the facts as determined by the IJ. We find that the BIA's interpretation of § 1003.1(d)(3) is reasonable.

The plain language of § 1003.1(d)(i) only prohibits the BIA from engaging in *de novo* factfinding—it must accept the IJ's findings of fact unless they are clearly erroneous. The plain language of § 1003.1(d)(ii), however, reserves to the BIA the authority to review *de novo* all questions of law, which necessarily includes the question whether a party met its burden of proof. *See, e.g., United States v. Gunter*, 551 F.3d 472, 482 (6th Cir.2009) ("This Court reviews *de novo* the sufficiency of the evidence to sustain a conviction."). Moreover, in promulgating § 1003.1, the Department of Justice made clear that while the BIA cannot engage in fact-finding, it retains the authority to determine whether the facts found by the IJ meet the relevant legal standard. *See* Board of Immigration Appeals: Procedural Reforms to Improve Case Management, 67 Fed. Reg. 54878, 54890 (Aug. 26, 2002) (noting, for instance, that the Board will decide *de novo* whether the facts found by the IJ amount to "a well-founded fear of future persecution"). In this case, in applying the "clear, unequivocal, and convincing evidence" standard *de novo*, the BIA did no more than decide whether the facts found by the IJ met the standard for concluding that Petitioner abandoned her LPR status.

*Ward v. Holder*, 733 F.3d 601 (6th Cir. 2013), cited by Petitioner in support of her contention that the BIA was compelled to remand her case to the IJ once it concluded that the IJ applied the wrong burden of proof, is not to the contrary. In fact, we think *Ward* supports the BIA's action in case. In *Ward*, the IJ not only erroneous-

ly applied the "clear and convincing evidence" standard to determine whether the petitioner had abandoned his LPR status, she also wrongfully assigned the burden of proof to the petitioner instead of the government. *Id.* at 608–09. We concluded that we were not authorized to engage in a *de novo* review of whether the petitioner had abandoned her LPR status. *Id.* Instead, we remanded the case "for the *Board* to consider whether Ward abandoned his lawful permanent resident status-but the *Board* must allocate the correct degree of proof to the government." *Id.* at 609 (emphasis added). We did not include any further instructions to the BIA to remand the case to the IJ to carry out our mandate. In other words, in *Ward,* we implicitly recognized that the BIA had the authority to decide *de novo* whether the government sustained its burden of proving the petitioner abandoned his LPR status. Accordingly, we find no error in the BIA's decision to apply the "clear, unequivocal, and convincing evidence" standard *de novo* in its review of the IJ's decision.

 Petitioner next contends that the BIA and the IJ erred in concluding that she abandoned her LPR status. As just indicated, the government bears the burden of proving abandonment of LPR status by "clear, unequivocal, and convincing evidence." *Ward,* 733 F.3d at 604. This standard is essentially equivalent to the "beyond a reasonable doubt" standard used in criminal cases. *Id.* at 605.

We examine the totality of the alien's circumstances in deciding whether she abandoned her LPR status. *Lateef v. Holder,* 683 F.3d 275, 280 (6th Cir.2012). This includes the location of her family, property, and job, the length of her trip or trips abroad, and any other evidence demonstrating her intent to maintain her LPR status. *Id.* The alien's subjective intent to maintain her status, without more, is insufficient—her actions must support her intent. *Id.* Moreover, the alien may unintentionally abandon her LPR status. *Id.* Finally, the LPR's trip abroad will be considered temporary if: 1) it is for relatively short period, fixed by some early event; or 2) it will terminate upon the occurrence of an event that has a reasonably possibility of occurring within a relatively short period of time. *Id.* In this case, substantial evidence supports the IJ's and BIA's conclusion that Petitioner abandoned her LPR status.

First, and most importantly, Petitioner's stay abroad in Germany was not for a short period of time nor was there any indication that it would terminate upon an event that had a reasonable possibility of occurring in a relatively short period of time. As the IJ found, and Petitioner admitted, she only intended to return to the United States upon sufficient improvement of her health or her husband's ability to obtain a job that provides health insurance. Neither of those events had a reasonable possibility of occurring in a short period of time. Moreover, Petitioner remained out of the United States continuously for a three-year period, returned periodically over the next two years, and when she was finally stopped and questioned by immigration officials she stated that she had no intention of residing permanently in the United States. Petitioner's actions during this period of time are a clear signal of intent to abandon her status. *Compare to Lateef,* 683 F.3d at 281 (alien's fifteen month trip to Pakistan showed abandonment of status); *Singh v. Reno,* 113 F.3d 1512, 1515–16 (9th Cir. 1997) (alien abandoned LPR status where he lived abroad most of the year and returned to California to work during the summers); *Portillo–Escobar v. Holder,* 444 Fed.Appx. 992, 994–95 (9th Cir.2011)

(alien who spent about a year in the United States and four and a half years in El Salvador abandoned LPR status); *Usmani v. U.S. Attorney General,* 341 Fed.Appx. 473, 475 (11th Cir.2009) (alien's year-long absence from United States without reasonably possible termination point showed abandonment of status). Petitioner quibbles with the IJ's finding that she spent "about half" of her time between the United States and Germany from 2006 to 2008. Petitioner points out that she actually spent more time in the United States than Germany during this period—a total of about 18 months in the United States and 16 months in Germany. While true, Petitioner's point is inconsequential. "About half" is a reasonable characterization of the split in time. The more salient point is that over about a six-year period, Petitioner spent only about 18 months in the United States and still had no intention of permanently returning.

Second, the IJ's finding that Petitioner's use of the VWP to enter the country repeatedly instead of her green card showed abandonment of status was reasonable. *See Singh,* 113 F.3d at 1515 (alien's use of visitor visa to enter country instead of green card showed abandonment of status). Petitioner's contention that she used the VWP because of her Crohn's disease is simply not supported by the record. *See supra* at 559 n.2.

Third, the IJ reasonably concluded that Petitioner had no strong ties to the United States for most of the period of her absence from the country. Petitioner's daughter, a U.S. citizen, lived in the United States, but Petitioner had no other substantial ties to the country. She lived in Germany with her husband for three continuous years and visited the United States periodically thereafter, but with no intention of permanently staying. Petitioner and her husband purchased a condo-minium in Houston, but not until October 2008 and their purchase of land in Colorado did not occur until removal proceedings had been instituted.

Petitioner's contention that the IJ and the BIA failed to consider the totality of the circumstances in finding that she abandoned her LPR status is not supported by the record or fair reading of their decisions.

In summary, we find that substantial evidence supports the IJ's and BIA's determination that Petitioner abandoned her status as a lawful permanent resident of the United States. Petitioner's petition for review of the BIA's removal order, therefore, is **DISMISSED.**