NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0171n.06

No. 17-3965

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LUIS ESTUPINAN-GONZALEZ, | ) | |
| | ) | **FILED** |
| Petitioner, | ) | Apr 02, 2018 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| JEFFERSON B. SESSIONS, III, Attorney General, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent. | ) | |
| | ) | |

Before: SILER and LARSEN, Circuit Judges; BLACK, District Judge.[*]

**SILER**, Circuit Judge. Petitioner Luis Alberto Estupinan-Gonzalez ("Estupinan") seeks review of the Board of Immigration Appeals' ("BIA") denial of his application for protection under the Convention Against Torture ("CAT"). For the reasons stated below, we **DENY** Estupinan's petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Estupinan, a Mexican national, first came to the United States illegally in 1996 when he was seven years old. (R. 37). He grew up and attended schools in Nashville, Tennessee. *Id*. In 2007, Estupinan was convicted of "forgery and two DUIs" and was placed in removal proceedings. (R. 37, 62, 100-01). He accepted an order of voluntary departure and returned to Mexico. (R. 9, 101). However, when Estupinan returned to his family's hometown in Zacatecas, Mexico, members of the Zetas—an organized criminal enterprise—noticed that he spoke Spanish with an American accent and wore American clothing. (R. 14, 108). Estupinan

---

[*] Honorable Timothy S. Black, United States District Judge for the Southern District of Ohio, sitting by designation.

was approached by the Zetas on three separate occasions, beginning in 2008. (R. 63, 109-13). The first two times he was not threatened or harmed. (R. 63, 111, 112). Then, in 2009, Estupinan and his friend, Martin Diaz,[1] were abducted at gunpoint by the Zetas, held in a warehouse, and severely beaten. (R. 63-64, 113-18). The Zetas offered to allow Estupinan to work for them in exchange for protection. (R. 64, 117). In response to this job offer, Estupinan said he "would see." *Id.* The Zetas told him they knew where he lived and would be looking for him. *Id.* Two months later, after he had recovered from his injuries, Estupinan illegally reentered the United States. (R. 64-65, 120). Three years later Estupinan was stopped by police in 2012 for a broken vehicle light. (R. 40, 132). The police officer discovered that Estupinan had an outstanding arrest warrant stemming from unpaid fines in his DUI charges. (R. 40).

### Immigration Judge's Decision

The Department of Homeland Security ("the Department") initiated removal proceedings against Estupinan in 2012. (R. 61). He applied for withholding of removal under Section 241(b)(3) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1231(b)(3). He also sought protection under the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT") art. 3, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85. (R. 61). An immigration judge ("IJ") denied Estupinan's application in 2017. (R. 61-82).

The IJ determined that Estupinan was credible, had sufficiently corroborated his withholding application, and had established that the harm he experienced at the hands of the Zetas rose to a level severe enough to constitute past persecution. (R. 73-74). However, the IJ also held that Estupinan failed to demonstrate the persecution he experienced was on account of

---

[1] Subsequent to this attack, in 2011, the Zetas shot and killed Martin Diaz. (R. 65, 126).

his (1) race, (2) religion, (3) nationality, (4) membership in a particular social group, or (5) political opinion. (R. 74-76); *see Sanchez-Robles v. Lynch*, 808 F.3d 688, 692 (6th Cir. 2015). Assuming that the BIA might disagree and hold that Estupinan was a member of a cognizable social group (Mexican-American expatriates), the IJ found, in the alternative, that Estupinan had not proven that the Mexican government was unable or unwilling to control the Zetas who targeted him. (R. 77-78). Additionally, the IJ found that Estupinan failed to carry his burden of establishing that it would not be reasonable for him to relocate and that his fear of future persecution was objectively reasonable. (R. 78-81).

The IJ also denied Estupinan's CAT claim. (R. 81-82). The IJ noted that the most important difference between an application for withholding of removal and a claim under the CAT is "that in order to succeed pursuant to the [CAT], it is not necessary to link the harm faced with any of the five protected grounds enumerated in relation to applications for asylum and withholding." (R. 71) (quoting *Castellano-Chacon v. I.N.S.*, 341 F.3d 533, 551 (6th Cir. 2003)). Yet, in a seemingly contradictory statement, the IJ declared that, "[a]s Respondent failed to meet his burden to show his eligibility for withholding of removal, he has necessarily failed to meet the higher burden required to demonstrate eligibility for CAT." (R. 82). The IJ clarified that "Respondent has failed to show that he would be tortured by, at the instigation of, or with the consent or acquiescence of a public official or a person acting in an official capacity." *Id*. With respect to the country conditions evidence, the IJ held that:

> The violence committed by criminal groups against the public is still a concern in Mexico generally, however, [Estupinan] did not give the Mexican government an opportunity to take action in his case, and he has not demonstrated that had he stayed in Mexico and reported [the Zetas] abuse to the police, that the Mexican government would not have intervened.

(R. 52). Thus, the IJ concluded that Estupinan "failed to meet his burden of establishing that the Mexican government is unable or unwilling to control the [Zetas'] acts of violence." (R. 53).

### *BIA's Decision*

On appeal to the BIA, Estupinan argued that the IJ applied an incorrect standard of proof in evaluating his CAT claim. (R. 8-12). The BIA "acknowledge[d] that one sentence of the [IJ's] decision equates a failure of proof for withholding of removal with a failure of proof for protection under the [CAT]." (R. 4). However, the BIA found that this "appear[ed] to be little more than a clerical error," because the IJ otherwise correctly stated CAT law principles, found petitioner to be credible, and concluded petitioner failed to show he would be tortured by, at the instigation of, or with the consent or acquiescence of a public official. (R. 4). And, because Estupinan did not identify any evidence that supported a claim for protection under the CAT, the BIA was not persuaded that the IJ's decision in that regard should be reversed or remanded. *Id.*

### JURISDICTION AND THE STANDARD OF REVIEW

Under 8 U.S.C. § 1252, we may review "a final order of removal." In removal matters, we review factual findings "under the highly deferential substantial-evidence standard." *Harmon v. Holder*, 758 F.3d 728, 732 (6th Cir. 2014) (citing *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009)); *see* 8 U.S.C. § 1252(b)(4)(B) ("[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary[.]"). However, "[w]e review the legal conclusions of the BIA de novo." *Harmon*, 758 F.3d at 732.

"The BIA's decisions are final agency determinations for purposes of judicial review, and [the courts] are also empowered to review the IJ's opinion to the extent that the BIA adopts that opinion." *Gaye v. Lynch*, 788 F.3d 519, 526 (6th Cir. 2015). To reverse determinations of the IJ and the BIA, the court "must find that the evidence 'not only supports a contrary conclusion, but

indeed *compels* it.'" *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006) (quoting *Yu v. Ashcroft*, 364 F.3d 700, 702-03 (6th Cir. 2004)).

Claims under the CAT require consideration of the possibility of future torture. *Mapouya v. Gonzales*, 487 F.3d 396, 414-15 (6th Cir. 2007). "In reviewing the Board's decision to deny withholding of removal under the CAT, we reverse only where the decision is manifestly contrary to law and not only supports a contrary conclusion, but indeed compels it." *Zaldana Menijar v. Lynch*, 812 F.3d 491, 501 n.5 (6th Cir. 2015) (citations omitted).

## DISCUSSION

### (1) Withholding of Removal under INA § 241

An alien can request withholding of removal in two ways: under the INA or the CAT. *Almuhtaseb*, 453 F.3d at 749. INA § 241(b)(3) provides that:

> [T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1231. To prevail on a petition for withholding of removal under the INA, an alien must show that there is a "clear probability," that is, "it is more likely than not," he would be subject to persecution on the basis of one of these five grounds (race, religion, nationality, membership in a particular social group, or political opinion) were he removed from this country. *See Liti v. Gonzales*, 411 F.3d 631, 640-41 (6th Cir. 2005) (quoting 8 C.F.R. § 1208.16(b)(2)).

### (2) Relief Under the Convention Against Torture

By contrast, to be eligible for relief under the CAT, "the applicant bears the burden of establishing 'it is more likely than not that he or she would be *tortured* if removed to the proposed country of removal.'" *Liti*, 411 F.3d at 641 (quoting 8 C.F.R. § 1208.16(c)(2)

(emphasis added)). Importantly, the torture must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1); *see Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004). Moreover, "an application for withholding of removal under the INA differs from one filed under [the CAT] because the latter focuses on a 'particularized threat of torture' without requiring a linkage to one of the five protected grounds." *Mapouya*, 487 F.3d at 414.

To assess the risk of future torture, an IJ considers: (1) evidence of past torture inflicted upon the applicant; (2) evidence that the applicant can relocate to a part of the country of removal where he is not likely to be tortured; (3) evidence of gross, flagrant, or mass violations of human rights within the country of removal; and (4) other relevant information regarding conditions in the country of removal. *Ali v. Reno*, 237 F.3d 591, 596-97 (6th Cir. 2001).

## IJ Properly Denied CAT Protection

Estupinan argues that the IJ and BIA improperly analyzed his claims for INA withholding of removal and CAT protection as one, relying on the same analytical framework for both. He further argues that the CAT standard is "more inclusive than the withholding standard—not more restrictive as the IJ wrongly concluded."

We reject Estupinan's argument. In this case, the IJ articulated the proper legal standard for protection under the CAT. (R. 71-72). The IJ expressly found that Estupinan failed to establish that it was more likely than not that he would be tortured by or with the acquiescence of the Mexican government if he returned to Mexico. (R. 82). Nonetheless, Estupinan claims the "CAT analysis was little more than an afterthought" and assigns error to the IJ's statement that:

> As Respondent failed to meet his burden to show his eligibility for withholding of removal, he has necessarily failed to meet the higher burden required to demonstrate eligibility for CAT.

(R. 82). He argues that "[w]hen comparing § 241 withholding relief with CAT relief, it is incorrect to assert that one claim serves as a proxy for the other." Although it is true that withholding of removal under INA § 241 and relief under the CAT require separate analyses, the factors do overlap. Furthermore, as the BIA noted, the IJ committed a mere "clerical error" by framing Estupinan's ineligibility for CAT relief in terms of his ineligibility for withholding of removal under INA § 241. (R. 4). The BIA held:

> We acknowledge that one sentence of the Immigration Judge's decision equates a failure of proof for withholding of removal with a failure of proof for protection under the Convention Against Torture. However, this sentence appears to be little more than a clerical error, given that the Immigration Judge otherwise provides a correct statement of the law for eligibility for protection under the Convention Against Torture.

(R. 4). Despite the IJ's awkwardly worded comparison between INA withholding and CAT protection, that decision recognized both forms of relief as distinct requests. The IJ correctly held "that in order to succeed pursuant to the [CAT], it is not necessary to link the harm faced with any of the five protected grounds enumerated in relation to applications for asylum and withholding." (R. 71) (quoting *Castellano*, 341 F.3d at 551). Even Estupinan concedes that "the IJ [gave] a correct recitation of the law on the CAT."

The IJ did not, as Estupinan contends, "conflate[] the legal standards for CAT and withholding." Rather, in ruling on Estupinan's CAT request, the IJ simply referenced the denial of INA § 241 relief so as to incorporate the same underlying factual findings. Our prior decisions have likewise discussed CAT relief in relation to the denial of § 241 withholding of removal. *See, e.g.*, *Berri v. Gonzales*, 468 F.3d 390, 397-98 (6th Cir. 2006) ("Just as they fail to demonstrate that persecution is more likely than not, [Petitioners] likewise fail to demonstrate

that torture is more likely than not. Therefore, we deny relief under the Convention Against Torture.").

The IJ's decision is supported by substantial evidence in the record. Torture is "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted . . . when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Haider v. Holder*, 595 F.3d 276, 289 (6th Cir. 2010) (quoting 8 C.F.R. § 1208.18(a)(1)).

Estupinan testified that he was tortured, not by government actors, but by members of a violent drug cartel. Importantly, the CAT does not afford protection to torturous acts inflicted by wholly private actors. *Ali*, 237 F.3d at 597. Estupinan alleged that the cartel's activities are tacitly sanctioned by local police because he had witnessed police trucks pass through cartel check points several times. (R. 28, 121-22). However, Estupinan never identified "a public official or other person acting in an official capacity" who instigated or acquiesced in his torture.

The IJ found Estupinan's testimony and documentary evidence to be credible, but also found that, "although corruption still remains a serious concern, the government of Mexico is cracking down on police officers tied to the cartels." (R. 77). Estupinan failed to prove it was more likely than not he would be persecuted if he returned to Mexico. Similarly, he failed to show that he is more likely than not to be tortured in Mexico by or with the acquiescence of a government official. In the words of the Department, this case "amounts to a dispute over the agency's weighing of evidence." However, the court only reverses the BIA's decision if it is manifestly contrary to law and the record evidence "not only supports a contrary conclusion, but indeed compels it." *Zaldana Menijar*, 812 F.3d at 501 n.5.

Accordingly, we **deny** Estupinan's petition for review because neither the IJ nor the BIA

erred by entering an order of removal.

**REVIEW DENIED**.