NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0436n.06

No. 22-3352

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 25, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| ELVA TRINIDAD-CONTRERAS, | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| PAMELA BONDI, Attorney General, | ) | |
| Respondent. | ) | OPINION |
| | ) | |

Before: THAPAR, READLER, and HERMANDORFER, Circuit Judges.

HERMANDORFER, Circuit Judge. Elva Trinidad-Contreras sought cancellation of her pending removal from the United States to Mexico. The immigration judge concluded that Trinidad-Contreras failed to establish the exceptional and extremely unusual hardship needed to qualify for cancellation. The Board of Immigration Appeals affirmed. Because we lack jurisdiction to review Trinidad-Contreras's factual arguments and otherwise find no error in the agency's analysis, we dismiss in part and deny in part the petition for review.

I

Trinidad-Contreras, a native and citizen of Mexico, entered the United States unlawfully in 2003. In 2018, local police arrested Trinidad-Contreras for driving without a license. The Department of Homeland Security then commenced removal proceedings because Trinidad-Contreras was present in the United States without being lawfully admitted or paroled.

Before the immigration judge (IJ), Trinidad-Contreras conceded that she was removable. But she sought cancellation of removal under 8 U.S.C. § 1229b(b)(1). That statute permits the Attorney General to cancel an alien's removal if the alien (A) has been continuously present in the United States for at least ten years, (B) "has been a person of good moral character during such period," (C) has no disqualifying convictions, and (D) "establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." *Id.* The hardship provision features here.

The IJ considered evidence for the cancellation-of-removal application at a live hearing. The Government stipulated that Trinidad-Contreras satisfied the first three requirements of the cancellation statute. The hearing thus centered on Trinidad-Contreras's argument that her removal would harm her two U.S.-citizen sons, then eight and five years old.

Trinidad-Contreras offered the principal testimony. She described arriving in the United States at the age of 17, her consistent efforts to maintain employment since, and her current position as a housekeeper making $350 per week. Trinidad-Contreras also discussed her relationship with her two sons and their father, Blas Lozano.[1] Though Lozano and Trinidad-Contreras never married, they lived as a couple with their sons until law enforcement detained Trinidad-Contreras. Lozano's own immigration status is unclear, and Trinidad-Contreras denied knowledge of it. She instead testified that her arrest and subsequent detention prompted Lozano to move out—though apparently to an apartment in the same complex. Trinidad-Contreras acknowledged that Lozano continues to care for her sons' well-being and has voluntarily provided

---

[1] In the record, this individual is called "Blas Lozano Sanchez," "Blas Lozano," and "Blas Lozano-Sanchez." We refer to him as "Lozano" throughout.

2

them with financial support "[a]lmost since they were born." A.R. 147-48. And she confirmed that Lozano has continued to provide their sons $400 per week and sees them regularly, including in a visit held the night before the removal hearing.

Still, Trinidad-Contreras explained that she was not open to leaving her sons with Lozano in the United States. If removed, she planned to relocate with her sons to Cuernavaca, Mexico, where her elderly mother has a home and resides with a caretaker. A move to Mexico, Trinidad-Contreras contended, would cause her boys economic hardship by reducing her wages and threatening Lozano's continued financial support. She also asserted that a move would result in various cultural challenges and lost educational opportunities. Finally, Trinidad-Contreras testified that obtaining medical care for her sons' vision issues would be more difficult, requiring travel to an optometrist three hours away.

Trinidad-Contreras's oldest son also spoke at the hearing. He chose to testify in Spanish because he only knew "[a] little bit" of English. A.R. 110. His testimony confirmed that Trinidad-Contreras was the boys' primary caretaker. He also stated that he had never been to Mexico before, but knew his grandmother lived there.

The IJ issued an oral decision denying cancellation of removal. Addressing economic harm, the IJ concluded that Trinidad-Contreras's hardworking nature and history of employment demonstrated that she could find work in Mexico. The IJ further noted that the home of Trinidad-Contreras's mother could provide a place for the family to begin reestablishing themselves. In addition, the IJ rejected that Lozano's lifelong support would abruptly end upon Trinidad-Contreras's deportation. The IJ cited Lozano's unbroken track record of voluntary financial contributions and his consistent participation in the boys' lives.

The IJ also disagreed that any educational, cultural, or healthcare challenges the sons would face in Mexico qualified as exceptional and extremely unusual hardship. A.R. at 78-80, 82. The lower educational quality in Mexico, the IJ observed, was a downside typical of most deportations. Trinidad-Contreras did not show that the boys would be "deprived of all schooling or all other opportunity to obtain any education." *Id.* at 80. Similarly, cultural adjustments would not be exceptional for Trinidad-Contreras's sons, particularly because they speak Spanish. And their only medical issue—needing glasses and periodic checkups—was routine. The IJ found that driving three hours to one or two appointments a year was not an unreasonable burden.

In reaching these conclusions, the IJ credited much of Trinidad-Contreras's testimony but questioned her candor regarding Lozano. The IJ found her attempts to downplay Lozano's continued involvement with and support of the boys unconvincing. The IJ questioned whether Trinidad-Contreras was minimizing "the involvement of [Lozano] in the children's lives possibly in an effort to paint the children as more vulnerable to her removal from the United States." A.R. 71.

Based on its hardship determination, the IJ denied Trinidad-Contreras's application for cancellation. Trinidad-Contreras did not seek voluntary departure—a step that would have avoided the automatic 10-year bar on reentry she now faces, *see* 8 U.S.C. § 1182(a)(9)(A)(ii)— even though both the IJ and the Government were open to that resolution. So the IJ entered an order of removal to Mexico.

Trinidad-Contreras appealed the IJ's decision to the Board of Immigration Appeals, which issued an opinion agreeing with the IJ. Trinidad-Contreras then timely petitioned this Court for review of the agency's determination. After requesting and receiving a period of abeyance,

Trinidad-Contreras asked this Court to move her case forward. We agreed and now address the petition for review.

## II

Circuit courts have "jurisdiction to review a 'final order of removal.'" *Singh v. Rosen*, 984 F.3d 1142, 1148 (6th Cir. 2021) (quoting 8 U.S.C. § 1252(a)(1)). Because the Board issued a written decision that agrees with the IJ's reasoning, we review both opinions. *See Harmon v. Holder*, 758 F.3d 728, 732 (6th Cir. 2014).

By statute, our review of the agency's determination is limited to "constitutional claims or questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D). That authorization covers "mixed questions of law and fact." *Wilkinson v. Garland*, 601 U.S. 209, 217 (2024). Applying the hardship standard to a particular alien's case, the Supreme Court has instructed, is a mixed question subject to review. *Id.* at 212. By contrast, we lack jurisdiction to review the agency's underlying factual findings. *Id.* at 225. When a petitioner's challenge is merely a factual dispute "cloaked as a question of law," we may not review it. *Singh*, 984 F.3d at 1149 (citation omitted). Unreviewable factual issues—such as "credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides"—form the core of the hardship determination and are often dispositive. *Wilkinson*, 601 U.S. at 225.

The proper standard for reviewing application of the hardship standard is an open question. From the Supreme Court's instruction in *Wilkinson*, we know our review must be "deferential." *Id.* Just how deferential, though, is the subject of ongoing debate.[2] We need not take on the

---

[2] The Third, Ninth, and Eleventh Circuits have settled on substantial evidence. *Wilkinson v. Att'y Gen.*, 131 F.4th 134, 140 (3d Cir. 2025); *Gonzalez-Juarez v. Bondi*, 137 F.4th 996, 1003 (9th Cir. 2025); *Lopez-Martinez v. Att'y Gen.*, Nos. 23-10105, 23-12058, 2025 WL 2234162, at *6 (11th Cir. Aug. 6, 2025). The Second Circuit has opted for clear error. *Toalombo Yanez v. Bondi*, 140

standard-of-review issue today because Trinidad-Contreras cannot prevail under any level of deference.

### III

To be eligible for cancellation of removal, Trinidad-Contreras must prove that her "removal would result in exceptional and extremely unusual hardship" to her U.S.-citizen sons. 8 U.S.C. § 1229b(b)(1)(D). That standard requires hardship that is "significantly different from or greater than the hardship that a deported alien's family normally experiences." *Moctezuma-Reyes v. Garland*, 124 F.4th 416, 422 (6th Cir. 2024). Of course, a substantial "baseline" hardship accompanies every deportation. *Id.* So showing "exceptional and extremely unusual hardship" is "a difficult burden for a petitioner to meet." *Id.* (quotation marks omitted). With these limits in mind, we turn to Trinidad-Contreras's hardship arguments.

### A

Trinidad-Contreras presses two threshold disagreements with the agency's hardship analysis. Neither succeeds.

*First*, Trinidad-Contreras contends that the IJ erred by noting that Trinidad-Contreras has fewer dependent children than the successful removal applicant in *In re Recinas*, 23 I. & N. Dec 467 (BIA 2002). According to Trinidad-Contreras, her number of children is irrelevant because the hardship provision covers even a single qualifying relative. And because Trinidad-Contreras otherwise sees herself the same as the *Recinas* applicant, she says the IJ should have granted her cancellation application too.

---

F.4th 35, 42 (2d Cir. 2025). Several other circuits, including this one, have to this point demurred. *See, e.g.*, *Ceniceros v. Bondi*, No. 24-3345, 2025 WL 1012712, at *4 (6th Cir. Mar. 31, 2025) (collecting cases).

6

The IJ's analysis was proper. As the Board noted, the statute requires that an IJ must address hardship by considering all of "the relevant factors in their totality." A.R. 4; *see Singh*, 984 F.3d at 1154. And in assessing hardship, "[d]ifferences in degree can be differences in kind." *Moctezuma-Reyes*, 124 F.4th at 423. A family may have resources to support two children but not five or six. Because the number of children factors into the statute's totality-of-the-circumstances analysis, the IJ did not err in discussing that difference to distinguish Trinidad-Contreras's case from *Recinas*. Nor, along similar lines, did the IJ place too much weight on Trinidad-Contreras's number of children. Instead, as the Board explained, the IJ distinguished *Recinas* using several additional factors, including that Trinidad-Contreras has another source of income, the ability to work, and a family contact in Mexico. Given these other grounds for distinction, we agree with the Board that the IJ did not give the number of children undue weight in the hardship analysis.

*Second*, Trinidad-Contreras claims that both the IJ and the Board "failed to discuss" her removal's "future impact on the children's lives." Trinidad-Contreras Br. 21. We disagree. The record instead is replete with discussion of how the boys' future financial, educational, and medical needs will be met months or years into the future. To be sure, Trinidad-Contreras may take issue with the factual findings contained in the IJ's and Board's future-hardship discussions. But under the governing statute, we lack jurisdiction to review those or any other of the agency's factual determinations. *Galvez-Bravo v. Garland*, 119 F.4th 1038, 1040 (6th Cir. 2024).

Nor, for future hardship purposes, can Trinidad-Contreras rest on her lack of means to re-enter the United States. Trinidad-Contreras declined to seek voluntary departure when asked, making her path to lawfully return more difficult. *Supra* p. 4. Her decision cannot now be bootstrapped into an argument about future hardship. *See Araujo-Padilla v. Garland*, 854 F. App'x 646, 651 (6th Cir. 2021). Regardless, the Board concluded that other factors adequately

and independently supported the IJ's hardship determination even accepting Trinidad-Contreras's argument about returning to the United States. Trinidad-Contreras provides no sound reason to overturn the Board's analysis.

B

That brings us to the crux of Trinidad-Contreras's submission—that the IJ and the Board legally erred by concluding that her sons would not experience "exceptional and extremely unusual hardship." *See* 8 U.S.C. § 1229b(b)(1)(D). Heeding our "deferential" standard of review and limited jurisdiction, we reject Trinidad-Contreras's contention. *Wilkinson*, 601 U.S. at 225.

1

Trinidad-Contreras primarily focuses on the economic hardship that might befall her sons if they relocate to Mexico. The IJ and the Board recognized that the family would have diminished financial resources. But both concluded that any financial difficulties the family may face are neither extreme nor unusual given Trinidad-Contreras's work prospects, a "highly involved ex-partner" who financially supports her, and the presence of at least one family member in Mexico. A.R. 77; *see also* A.R. 4. We see no error in the IJ and Board's legal analysis.

The IJ first considered Trinidad-Contreras's economic prospects in Mexico. The IJ found that Trinidad-Contreras could find work in Mexico, citing her history in the agricultural industry and present employment in a housekeeping job that paid $350 per week. The Board likewise concluded that the record, including Trinidad-Contreras's "work history in the United States [and] her ability to continue working" despite health conditions, undercut Trinidad-Contreras's claims of exceptional economic hardship. A.R. 4.

8

Trinidad-Contreras responds that a move to Mexico will reduce her employment opportunities and wages. "[F]inancial . . . strains," though, "are the typical results of removal; they aren't rare." *Moctezuma-Reyes*, 124 F.4th at 423. The IJ found that Trinidad-Contreras has two "employable trades" that could allow her to secure work in Mexico. A.R. 81. That weighs against a finding of exceptional economic hardship. *See Rodriguez-Salas v. Garland*, 849 Fed. App'x. 582, 585 (6th Cir. 2021). So does the IJ's finding that the family could begin anew at the home of Trinidad-Contreras's mother. *See Tolentino-Hernandez v. Garland*, No. 20-4021, 2021 WL 4782689, at *3 (6th Cir. Oct. 13, 2021). The Board did not displace that discussion.

Separately, the IJ concluded that income from Lozano would help redress the sons' economic hardship. As the Board noted, the record evidence showed that Lozano had provided Trinidad-Contreras's sons "$400 per week '[a]lmost since they were born.'" A.R. 4 (quoting A.R. 147). Those contributions were voluntary, not court ordered, and had continued even throughout Trinidad-Contreras's immigration proceedings. Given that evidence, the IJ found "no reason to believe" that Lozano would cease providing economic support should his sons move to Mexico. A.R. 81. The Board did not disturb the IJ's factual conclusion.

Before this Court, Trinidad-Contreras objects to the agency's finding that Lozano will support their children going forward. But again, the conclusion that Lozano will continue to provide economic support to his sons is a factual one. As such, we lack jurisdiction to review it. *Wilkinson*, 601 U.S. at 225.

To the extent Trinidad-Contreras means to contest the adequacy of the agency's explanation about Lozano, that argument fails too. Trinidad-Contreras contends that the Board "totally missed" the question of Lozano's immigration status. But the Board need not issue its own findings on every point. It instead can affirm the IJ's reasoning and conclusions, as it did

9

here. *See Harmon*, 758 F.3d at 732. When that occurs, we "review the decisions of both the Board and the immigration judge" to determine whether the agency's decision "contained any errors." *Diaz-Roblero v. Garland*, No. 23-3873, 2024 WL 3596873, at *2 (6th Cir. July 31, 2024). And the IJ directly confronted the lack of record evidence on Lozano's immigration situation— including by citing Trinidad-Contreras's testimony disclaiming any knowledge of Lozano's current immigration status. The IJ then concluded that, no matter Lozano's immigration situation, his lifelong, voluntary support of his sons is unlikely to stop.

Nor did the IJ improperly discount or ignore Trinidad-Contreras's testimony about Lozano's future support. Rather, citing several inconsistencies in Trinidad-Contreras's account, the IJ expressed "concern[s] with her candor as it pertains to the nature of the relationship that she has with [Lozano]." A.R. 72; *supra* p. 4. Again, we lack jurisdiction to review that credibility determination. *Wilkinson*, 601 U.S. at 225.

2

Trinidad-Contreras next cites the educational, cultural, and medical difficulties her sons may experience in Mexico. She argues that these factors, combined with potential financial hardship, together establish the requisite hardship for cancellation. The IJ concluded, and the Board agreed, that Trinidad-Contreras did not demonstrate any challenges exceeding those that typically accompany deportation.

We too conclude that Trinidad-Contreras has not cleared the hardship threshold on this record. "[R]educed educational opportunities" are among the most common side effects of removal. *Moctezuma-Reyes*, 124 F.4th at 422. So to prevail, Trinidad-Contreras must establish "truly exceptional situations" like "compelling special needs in school." *Id.* at 424 (citation omitted). Trinidad-Contreras does not cite any. And the IJ found that Trinidad-Contreras failed

10

to show that her sons will be unable to attend school. Though the sons would need to begin paying tuition after primary school, the IJ concluded that they would not be wholly deprived of education. *See Singh*, 984 F.3d at 1155. It noted, too, that the sons' U.S.-citizen status meant they could later pursue additional education in the United States.

As for Trinidad-Contreras's cultural argument, the IJ acknowledged that the move will come with an "adjustment period." A.R. 78. But such adjustment is not unusual; it attends most moves to a foreign country. *See Tolentino-Hernandez*, 2021 WL 4782689, at *3. Both the IJ and the Board further noted that the sons speak Spanish, which would lessen the challenges with cultural transition. *See id.*

Nor has Trinidad-Contreras demonstrated qualifying medical hardship. As with education, reduced access to medical treatments comprises part of the "lower standard of living" accompanying most deportations. *Tolentino-Hernandez*, 2021 WL 4782689, at *2 (citation omitted). A medical-related hardship might be extreme or unusual if an alien's relative has "very serious health issues" or if "necessary treatment" is "unavailable" after removal. *Pinales-Salas v. Garland*, No. 23-3675, 2024 WL 1510662, at *7 (6th Cir. Apr. 8, 2024). By contrast, the IJ and Board appropriately concluded that the "common" eye conditions of Trinidad-Contreras's sons—readily treatable though biannual appointments in Mexico—do not rise to the level of extreme medical hardships. A.R. 5, 78.

For the above reasons, Trinidad-Contreras has not shown that the agency erred in applying the statutory hardship standard to the record facts. A contrary conclusion risks converting the law's "rare" outlet for "exceptional and extremely unusual hardship" into the going rule for most "every removal." *Moctezuma-Reyes*, 124 F.4th at 422-23. The text of the hardship provision and this Court's precedents do not permit that result.

11

\*       \*       \*

The petition for review is dismissed to the extent that it presents unreviewable factual arguments and is otherwise denied.