NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0551n.06

No. 25-3071

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

ANTONIO PABLO-VENTURA,

    Petitioner,

v.

PAMELA J. BONDI, Attorney General,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW OF
AN ORDER OF THE BOARD OF
IMMIGRATION APPEALS


OPINION

Before: MOORE, CLAY, and WHITE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Antonio Pablo-Ventura is a native and citizen of Mexico who has lived in the United States without legal status since 1999. In 2018, the Department of Homeland Security issued a notice to appear charging Pablo-Ventura as removable. Pablo-Ventura sought cancellation of removal on the basis of exceptional and extremely unusual hardship to qualifying relatives, namely, his two United States-citizen children. An Immigration Judge (IJ) denied Pablo-Ventura's application for cancellation of removal, and the Board of Immigration Appeals (BIA) affirmed. Pablo-Ventura now petitions this court for review.

For the reasons that follow, we **DENY** the petition for review.

## I. BACKGROUND

Pablo-Ventura is a native and citizen of Mexico. He first entered the United States in 1999; he left once in 2005 to visit family in Mexico and returned to the United States in 2006. Admin. R. (AR) at 55 (IJ Order). He was not admitted or paroled when he entered the United States. *Id.*

at 54. On January 10, 2018, the Department of Homeland Security issued Pablo-Ventura a Notice to Appear charging him as removable. AR at 359–60 (Notice to Appear). Pablo-Ventura sought cancellation of removal pursuant to 8 U.S.C. § 1229b(b). Under that statute, "[t]he Attorney General may cancel removal of" a noncitizen who has been continuously, physically present in the United States for at least ten years; "has been a person of good moral character" in that time; has not been convicted of certain federal offenses; and "establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States." 8 U.S.C. § 1229b(b). Two of Pablo-Ventura's children, ages 10 and 12 at the time of Pablo-Ventura's application, are United States citizens. AR at 55, 61 (IJ Order).

An IJ in Cleveland, Ohio, held a hearing on Pablo-Ventura's removability on March 17, 2022. *Id.* at 54. Pablo-Ventura testified that he earned approximately $1,300 to $1,400 per week in the United States and was the sole breadwinner for his wife and three children. If he were removed from the United States, his family would likely return to Mexico with him. He expressed concern about his family living in Mexico because of violence in the area where he is from. Although it would be difficult to find a good job in Mexico, he thought he might be able to work with his father's construction business and that his welding experience might assist him in locating employment. He emphasized that there would be lots of expenses for his family, including enrolling the children in school. He also stated that relocating to Mexico would be difficult for his children because of their limited Spanish proficiency. *Id.* at 56–58.

Pablo-Ventura's wife testified that whether she and the children would go to Mexico with Pablo-Ventura would be a difficult decision. Although Mexico is dangerous and there are different opportunities for the children, she might be unable to stay in the United States without Pablo-

2

Ventura because she does not work. The couple's two United States-citizen children had never been to Mexico. The youngest child may be unable to attend school in Mexico owing to her limited Spanish language abilities, but she was practicing. Pablo-Ventura's wife expressed fear about the dangerousness of her and Pablo-Ventura's hometown. *Id.* at 58–60.

The IJ found both Pablo-Ventura and his wife to be credible witnesses. *Id.* at 60. Examining the evidence, the IJ concluded that Pablo-Ventura had not established that the hardship his qualifying children would face upon his removal would rise to the level of exceptional and extremely unusual. *Id.* at 61. The IJ reasoned that although Pablo-Ventura had expressed concern about the financial and life-adjustment hardship that his children would experience in Mexico, he had some potential for employment with his father or using his welding skills. Pablo-Ventura had not himself researched jobs that may be available to him in Mexico. The family also had about $34,000 in assets that could help offset the costs of relocation. *Id.* at 61–62. Additionally, he stated that his children did not have any educational or health issues. *Id.* at 61. Although there were safety concerns with his hometown, Pablo-Ventura acknowledged his family could live elsewhere. *Id.* at 62. Pablo-Ventura's children could speak some Spanish and were working to improve their language skills. *Id.* Insofar as Pablo-Ventura's wife and children remained in the United States, the IJ found that, although Pablo-Ventura's wife does not currently work, she acknowledged that she would need to gain employment to support her family if Pablo-Ventura were removed. Furthermore, the IJ determined that the separation hardships that Pablo-Ventura's children would experience did not rise to the level of exceptional and extremely unusual. *Id.* at 63.

Based on these findings, the IJ denied Pablo-Ventura's application for cancellation of removal and granted him post-conclusion voluntary departure. *Id.* at 63–64. Pablo-Ventura timely appealed to the BIA. The BIA agreed with the IJ that Pablo-Ventura had not established that his removal would cause exceptional and extremely unusual hardship to his two U.S.-citizen children. AR at 3 (BIA Order). The BIA highlighted the IJ's findings as to Pablo-Ventura's job skills and employment prospects in Mexico, the family's assets, and the ability to move somewhere other than Pablo-Ventura's hometown in order to address safety concerns. *Id.* at 4. The BIA reasoned that although Pablo-Ventura's children "face a lowered standard of living and reduced economic opportunities" in Mexico, that "is often a natural consequence of the removal of a family member, and the evidence submitted does not otherwise establish that the impact on the qualifying relatives would be unusually acute in this case." *Id.* The BIA thus dismissed the appeal.

Pablo-Ventura now petitions for review in this court. He contends that both the IJ and the BIA "committed multiple legal errors in applying the 'exceptional and extremely unusual hardship' standard." D. 15 (Pet'r Br. at 10). Specifically, he argues that "[t]he IJ failed to conduct a cumulative and aggregate analysis of the hardship factors," *id.* at 11, and instead erroneously considered certain hardships in isolation while also neglecting hardships owing to a lack of immigration options and a language barrier for his ten-year-old daughter, *id.* at 12–13. Pablo-Ventura also claims that "[t]he IJ inadequately analyzed" the hardship to his children if they were to relocate to Mexico. *Id.* at 13–14. Moreover, according to Pablo-Ventura, the IJ overemphasized Pablo-Ventura's children's lack of medical issues. *Id.* at 13. Finally, Pablo-Ventura argues that his case must be remanded for the IJ to "reach the discretionary issue of whether to grant cancellation of removal" after a proper hardship analysis. *Id.* at 16–17.

4

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

We have jurisdiction to review the question of whether Pablo-Ventura has established "exceptional and extremely unusual hardship" as a mixed question of law and fact. *Moctezuma-Reyes v. Garland*, 124 F.4th 416, 423 (6th Cir. 2024) (citing *Wilkinson v. Garland*, 601 U.S. 209, 222 (2024)); *see also, e.g.*, *Ceniceros v. Bondi*, No. 24-3345, 2025 WL 1012712, at *3 (6th Cir. Mar. 31, 2025) (same). "Where, as here, the BIA issues its own decision rather than summarily affirming the IJ, the BIA decision is reviewed as the final agency decision, but the IJ's decision is also reviewed to the extent that the BIA adopted it." *Harmon v. Holder*, 758 F.3d 728, 732 (6th Cir. 2014); *see also Skripkov v. Barr*, 966 F.3d 480, 486 (6th Cir. 2020) ("Where the Board affirms the IJ's ruling but adds its own comments, we review both the IJ's decision and the Board's additional remarks." (quoting *Karimijanaki v. Holder*, 579 F.3d 710, 714 (6th Cir. 2009))). Our review is deferential because the hardship inquiry is "primarily factual." *Wilkinson*, 601 U.S. at 225; *see also Singh v. Rosen*, 984 F.3d 1142, 1154 (6th Cir. 2021).

The parties quibble over the precise standard of review we ought to employ here. Pablo-Ventura urges us to review de novo the hardship determination as a mixed question of law and fact. D. 15 (Pet'r Br. at 8–9). The Government, on the other hand, argues at length that "the appropriate standard of review is the 'compelling evidence' standard outlined in 8 U.S.C. § 1252(b)(4)(B)." D. 21 (Resp't Br. at 10–15). We need not resolve this question here because "under any level of deference, the IJ and BIA adequately supported the conclusion that [Pablo-Ventura] failed to establish that [his children] will suffer exceptional and extremely unusual

hardship." *Garcia Contreras v. Bondi*, No. 24-4051, 2025 WL 3094136, at \*6 (6th Cir. Nov. 4, 2025); *Moctezuma-Reyes*, 124 F.4th at 423.

## B. Analysis

We agree with the BIA and the IJ that Pablo-Ventura has failed to make the required showing for cancellation of removal. Under our precedents, "'exceptional and extremely unusual hardship' means hardship sustained by a deported alien's qualifying relatives that's significantly different from or greater than the hardship that a deported alien's family normally experiences." *Moctezuma-Reyes*, 124 F.4th at 422. This standard is a "difficult" one for a petitioner to meet— "many severe hardships resulting from deportation aren't rare, but expected." *Id.* Put slightly differently, a petitioner must "establish that his qualifying relatives would suffer hardship that is substantially different from, or beyond, that which would normally be expected from the deportation of an alien with close family members here." *Monreal-Aguinaga*, 23 I. & N. Dec. 56, 65 (B.I.A. 2001) (cited in *Moctezuma-Reyes*, 124 F.4th at 422).

Pablo-Ventura's argument that the IJ and BIA failed to analyze the hardship factors in the aggregate is plainly unsupported by the record. Indeed, both the IJ and BIA explicitly stated that they had done so. AR at 62 (IJ Order) ("[T]he record here does not establish that the hardships [Pablo-Ventura's children] would experience in the cumulative would amount to the exceptional and extremely and [sic] unusual hardship level."); AR at 4 (BIA Order) ("Considering all relevant factors in the aggregate . . . the respondent did not demonstrate that his children's hardship would be substantially beyond the hardships that family members commonly experience when a loved one is removed from the United States."); *see also* AR at 52 (IJ Order Addendum) ("All relevant factors, even if not extreme individually, must be considered in the aggregate in determining

6

whether exceptional and extremely unusual hardship exists."). It is clear from the orders that the IJ and BIA properly analyzed the factors taken as a whole, not in isolation.

As to Pablo-Ventura's contention that the IJ failed to consider certain facts, those arguments either were not presented to the IJ or were evidently considered and addressed. Before this court, Pablo-Ventura argues that the IJ did not consider "[l]ack of [i]mmigration [o]ptions," i.e. "absence of visa pathways." D. 15 (Pet'r Br. at 13). The record reveals, however, that Pablo-Ventura did not advance this argument before the IJ. It was not improper for the IJ not to consider an unraised issue. *See Fernandez-Villafan v. Garland*, No. 23-3223, 2023 WL 8651267, at *6 (6th Cir. Dec. 14, 2023) ("[Petitioner] did not raise whether he could legally immigrate before the IJ, so he should not have expected the IJ to consider it."); *Tolentino-Hernandez v. Garland*, No. 20-4021, 2021 WL 4782689, at *4 (6th Cir. Oct. 13, 2021) ("[Petitioner] argues that the IJ failed to address the fact that [he] has no other lawful means of immigrating to the United States. Our review of the record, however, shows that [Petitioner] did not raise this issue before the IJ. Accordingly, we lack jurisdiction to review this alleged hardship."). Pablo-Ventura's argument that the IJ failed to consider the "language barrier" for the children, "particularly the 10-year-old's limited Spanish proficiency," D. 15 (Pet'r Br. at 12), is also belied by the record. The IJ found that although Pablo-Ventura "expressed concern with at least one of his children's limited Spanish proficiency," Pablo-Ventura's wife testified that "all of the children can speak some Spanish and that they have been practicing to improve." AR at 62 (IJ Order). Pablo-Ventura additionally maintains that the IJ failed to consider Pablo-Ventura's own mental health and risk for suicide, citing a psychotherapist report that he submitted as evidence before the IJ. D. 15 (Pet'r Br. at 12, 15). But the IJ in fact addressed that report in his decision. AR at 62 (IJ Order) ("The Respondent

also submitted a psychotherapist report addressing concerns with the family losing their current community and stability.").

Contrary to Pablo-Ventura's assertion, the IJ also addressed at some length additional possible hardships Pablo-Ventura's family might face if they were to relocate to Mexico with him. *See id.* at 61–62. The IJ discussed, among other things, Pablo-Ventura's possible employment options, his and his wife's assets, the educational options for his children in Mexico, and the stability and adjustment difficulties that his children would face. After canvassing these considerations, the IJ concluded that although "there would be a level of hardship experienced by [Pablo-Ventura's] family," such hardship would not "rise to the level of exceptional and extremely and [sic] unusual." *Id.* at 62. The BIA "agree[d]" with the IJ, likewise recognizing the potential hardships of Pablo-Ventura's family's relocation. AR at 3–4 (BIA Order) (noting Pablo-Ventura's argument on appeal that "schooling in Mexico is expensive and the children risk having to quit school to assist the family economically").

Pablo-Ventura's argument that the IJ "applied an impermissible 'unconscionable' standard" is also unavailing. D. 15 (Pet'r Br. at 14). Neither the IJ nor the BIA used that term, and the record does not suggest that either one applied such a test. In fact, the IJ's recitation of law explicitly stated that "an applicant need not show that . . . hardship would be unconscionable." AR at 52 (IJ Order Addendum). The IJ balanced the appropriate hardships, which analysis the BIA affirmed. *See Pinales-Salas v. Garland*, No. 23-3675, 2024 WL 1510662, at *7 (6th Cir. Apr. 8, 2024); *Diaz-Roblero v. Garland*, No. 23-3873, 2024 WL 3596873, at *3 (6th Cir. July 31, 2024). Pablo-Ventura seizes on the IJ's reference to his children's lack of health issues. D. 15 (Pet'r Br. at 14). The record shows, however, that the IJ mentioned Pablo-Ventura's children's general good

health only briefly, as one of the factors the IJ was weighing in his determination. *See* AR at 61–62 (IJ Order).

Neither the IJ nor the BIA misapplied the hardship standard to the facts in this case. To be sure, Pablo-Ventura's removal would present hardship to his U.S.-citizen children. But he has not demonstrated that the hardship would be "exceptional and extremely unusual." "Diminished employment opportunities and financial hardship are typical results of removal and do not generally support a finding of requisite hardship." *Garcia Contreras*, 2025 WL 3094136, at *6. Likewise, Pablo-Ventura has not shown that his children's "difficulties adjusting to . . . their . . . life in a new country," AR at 62 (IJ Order), would be outside of the norm as compared with other removals, *see, e.g.*, *Moctezuma-Reyes*, 124 F.4th at 423 ("[E]motional strains are the typical results of removal; they aren't rare."); *Trinidad-Contreras v. Bondi*, No. 22-3352, 2025 WL 2732495, at *5 (6th Cir. Sep. 25, 2025) ("[A]djustment is not unusual; it attends most moves to a foreign country."). Nor does the potential cost of his children's further education in Mexico suffice to meet the standard.

Finally, Pablo-Ventura briefly asserts a due-process argument, in which he essentially restates the contentions considered and rejected above. "[W]e reject attempts to 'repackage[]' a merits disagreement with the Board as a constitutional argument." *Fernandez-Villafan*, 2023 WL 8651267, at *6 (alteration in original) (quoting *Araujo-Padilla v. Garland*, 854 F. App'x 646, 652 (6th Cir. 2021)). Accordingly, this argument fails.

### III. CONCLUSION

Because Pablo-Ventura failed to establish that his removal would cause "exceptional and extremely unusual hardship" to a qualifying family member, the petition for review is **DENIED**.